# Exhibit A



Direct Dial Number
(215) 575-7257

**Dilworth Paxson**LLP

Timothy B. Anderson
tanderson@dilworthlaw.com

June 13, 2014

**Via Email and Regular Mail:**
Hugh Dunkerley, Managing Director
Burnham Securities Inc.
18500 Von Karman Ave
Suite 560
Irvine, CA  92612

      Re:  **Wakpamni Lake Community Bond Program**

Dear Mr. Dunkerley:

  1.  **Scope of Engagement**

  The Rules of Professional Conduct regulating the practice of law suggest a written fee agreement between attorneys and their clients, and require that clients be informed of our billing practices in writing. The purpose of this letter is to set forth the scope of the engagement of Dilworth Paxson LLP (the "Firm") as counsel and the role we propose to serve and the responsibilities we propose to assume as counsel in connection with the financing (the "Financing") being undertaken by you for the above matter.  As counsel, we will prepare and examine the proposed lending documents necessary to financing the Standing Rock Sioux project.

  I will be primarily responsible for the work on this engagement, but we will utilize associates as appropriate who bill at lower rates.

  2.  **Fees and Expenses**

  We will submit an invoice at the conclusion of the project at such fee based upon our estimated hours spent on your matter, plus expenses (Attached are our standard billing procedures for your reference) currently estimated to be $75,000 - $100,000.  Our hourly rates are as follows:  Timothy Anderson $410.00, Elizabeth Preate Havey $385.00 and Andrew Maher $305.00.  We would intend to provide you a final estimate of our proposed fee upon pricing of the bonds.  Such fee is contingent upon closing and is to be paid from bond proceeds.

  We do our best to see that our clients are satisfied not only with our services but also with the reasonableness of the fees, costs and expenses charges for these services. Therefore, if you have any questions or objections to a statement or the basis for our fees, you should raise it with us promptly for discussion.  If you object only to a portion of a statement, we ask that you pay the remainder, which will not constitute a waiver of your objections.

Burnham Securities Inc.
Page 2
June 13, 2014

### 3. Arbitration Clause

Any dispute involving the relationship between the client and this Firm will be arbitrated in Philadelphia by a neutral arbitrator selected in accordance with the Philadelphia Bar Association's client dispute procedures. If for any reason such procedure is unavailable or determined to be inappropriate, then a neutral arbitrator will be selected by the parties. If the parties are unable to reach agreement regarding the selection of the arbitrator, the arbitrator shall be appointed by the United States District Court for the Eastern District of Pennsylvania or the Court of Common Pleas of Philadelphia County in a proceeding to enforce this arbitration provision. The arbitration shall be final, binding and not appealable. You understand and agree that by agreeing to the arbitration of any controversy, claim, dispute or other matter arising out of or relating to this engagement letter, you will have no right to sue in court and will have no right to a trial by jury.

In connection with any such dispute, all claims will be strictly limited to actual and direct economic loss. The parties waive any right to claim consequential or punitive damages. The prevailing party in the resolution of any dispute shall have the right to be reimbursed by the other party for all fees and expenses, including reasonable attorney's fees, incurred in the dispute.

### 4. Withdrawal from Representation.

The attorney/client relationship is one of mutual trust and confidence. If you have any questions at all about the provisions of this engagement, we invite inquiries. We encourage our clients to inquire about any matter relating to our engagement or monthly statements that are in any way unclear or appear unsatisfactory. Conversely, any failure on your part to meet your obligation of timely payments under this agreement will constitute authorization for the Firm to withdraw from representing you and to reveal this agreement and any other necessary documents to any court or agency if the same should prove necessary to effect withdrawal. You agree by signing below and waive the perceived conflict from any past representation.

This engagement is also subject to termination by either party at its sole discretion, subject to the Rules of Professional Conduct and any applicable court rules. Upon such termination, however, you will remain liable for any unpaid fees and costs, whether or not billed.

### 5. Privacy.

In the course of providing you with legal services, we may receive significant nonpublic personal financial information from you or from other financial advisors at your specific instruction. All information that we receive from you or from others at your direction will be held in confidence and not released to people outside the Firm, except as required in the performance of our services, as agreed to by you, or as required under an applicable law. In order to protect your nonpublic personal information we maintain physical, electronic and procedural safeguards. We consider all information relating to representation of our clients to be confidential, and it is treated accordingly, as required by the Rules of Professional Conduct.

Burnham Securities Inc.
Page 3
June 13, 2014

### 6. Communications.

The Firm regularly communicates with its clients and with third parties, on behalf of its clients, through the use of landline, digital and cellular telephones, wireless email devices, unencrypted e-mail and telecopier machines. Each of these means of communication is practically and technologically susceptible to varying risks of interception by (or misdelivery to) unintended recipients. By executing this agreement, you consent to the Firm's utilization of the above-referenced means of communication.

If you are not fully versed in the risks inherent in each of the aforementioned means of communication, please contact the undersigned to discuss them before executing this agreement. If you would prefer that the Firm refrain from using one or more of the above-referenced means of communication please refrain from executing this agreement, communicate that preference to us in writing, and we will revise this agreement accordingly.

### 7. Future Services.

The terms of this letter will also apply to services rendered for such future matters that we mutually agree will be handled by the Firm. If, however, such services are substantially different from those to which this agreement applies, either party may request that a new agreement be executed, or that this agreement be reacknowledged together with payment of an additional retainer and satisfaction of outstanding invoices. Our undertaking to perform additional services in the future is subject to our Firm's customary intake procedures, including conflict checks.

### 8. Conflict/Waiver.

As you are aware from our discussions, we have worked with and represented Wakpamni Lake Community with regard to some of their other business opportunities. We are not representing them in this matter and have recommended they obtain other legal counsel. Nonetheless, we ask that you waive any real or perceived conflict of interest based upon our prior representations of Wakpamni Lake Community. We have obtained a similar waiver from Wakpamni Lake Community.

### 9. Acknowledgement of Terms.

If this letter correctly sets forth your understanding of the scope of the services to be rendered to you by the Firm, and if the terms of the engagement are satisfactory, please execute the enclosed copy of this letter and return it to us. If the scope of the services described is incorrect or if the terms of the engagement set forth in this letter are not satisfactory to you, please let us know in writing in order that we can discuss either aspect.

By executing this agreement, you acknowledge that there is uncertainty concerning the outcome of this matter and that the Firm and the undersigned attorneys have made no guarantees as to the disposition of any phase of this matter. Any representation or expression relative to the

Burnham Securities Inc.
Page 4
June 13, 2014

outcome of this matter is only an expression of opinion and does not constitute a guarantee. The Firm shall not be responsible for the performance of any legal service under this agreement until such agreement is returned to the Firm, whereupon our engagement by you is accepted per the stated terms, subject to the approval of the Firm's New Business Committee.

    We look forward to working with you and thank you once again for the opportunity to serve you.

    By executing this letter below, you agree on behalf of Burnham Securities, Inc. waive the conflict resulting from the foregoing matter.

    If the foregoing terms of this engagement are acceptable to you, please so indicate by returning the enclosed copy of this letter signed by an appropriate officer, retaining the original for your files. We look forward to working with you.

Sincerely,

Timothy B. Anderson

TBA:dlg
Encl.

**ACCEPTED AND APPROVED:**

**Burnham Securities, Inc.**

By: _____
    Hugh Dunkerley, Managing Director

Date: June 17th, 2014

116871020_1

## DILWORTH PAXSON LLP

Standard Terms and Conditions of Engagement

Dilworth Paxson LLP (the "firm") bills for reasonable charges and disbursements incurred in connection with an engagement. Clients are billed for external charges at the actual cost billed by the vendor except in the few cases noted below.

5. Research Services. Use of on-line computerized research (primarily Lexis-Nexis and Westlaw) and use of outside research services are billed at the supplier's standard charges for such services. There is no charge for information retrieved from public databases through the Internet (including SEC Filings and EDGAR).

The State of Delaware Database provides computer access to a corporations database in Dover, Delaware. The charge for this service is $50 per transaction, which is the average amount charged by outside services.

6. Travel-Related Expenses. Travel expenses are billed at cost and include air or rail travel, lodging, car rental, taxis or car service, tips and other reasonable miscellaneous items associated with travel. Corporate and/or negotiated discounted rates, if any, are passed on to the client.

7. Reproduction. Photocopying performed in-house is charged at 23 cents per page. Photocopying projects performed by outside vendors are billed at the actual invoice amount. Special arrangements can be made for unusually large projects.

8. Electronic Communications: Clients are charged for communications services as follows:

- Telephone Charges. There is no charge for local telephone calls. Long distance telephone calls made from the firm, as well as collect, credit card, conference call and third-party calls, are charged at cost plus applicable taxes and overhead, and are assigned to the specific matter for which such charges were incurred.

- Facsimile Charges. Out-going facsimiles are charged at $1.00 per page. There is no charge for in-coming facsimiles.

9. Special Services, Items and Equipment. If, due to the nature of a client's legal needs, special services, items or equipment are purchased and/or used, such as case-specific software or computer equipment, the costs thereof may be charged to the client; provided, however, prior to incurring such costs the client will be notified of the need for and cost of such items.

10. Postage and Courier Services. Outside messenger and express carrier services are charged at the actual vendor invoice amount which frequently involves discounts negotiated by the firm. For bulk mailings, registered and/or certified mail, postage is charged at actual U.S. mail rates. On certain occasions, internal staff may be required to act as messengers; a

116871020_1

standard rate is charged for their time.

11. <u>Meals</u>. Business meals with a client are charged at actual cost. Breakfast, lunch and dinner meetings with the client at the firm are charged based on the actual costs of such meals. Beverage and snack services at the firm's offices are not charged.

When overtime, weekend or holiday work is required, clients are charged for the actual, reasonable cost of meals for the attorneys and staff who so work specifically for the client.

12. <u>Staff Overtime</u>. Non-attorney staff are paid time and one-half for every hour of overtime worked on weekdays, and double time on weekends and holidays, when such staff are required to work overtime specifically for the client.

13. <u>Direct Payment by Clients of Other Disbursements</u>. Other major disbursements incurred in connection with an engagement will be paid directly by the client. (Those which are incurred and paid by the firm will be charged to the client at the actual vendor's invoice amount). Examples of such major disbursements that clients will pay directly include:

- <u>Professional Fees</u> (including disbursements for outside professional services such as local counsel, accountants, expert witness and other professional fees).

- <u>Filing/Court Fees</u> (such as disbursements for agency fees to file documents, standard witness fees, juror fees).

- <u>Transcription Fees</u> (including disbursements for outside transcribing agencies and courtroom stenographer transcripts).

- <u>Other Disbursements</u> (including any other required out-of-pocket expenses incurred in connection with the matter).

14. <u>Interest Charges</u>. If an invoice is not paid within 45 days of receipt, the firm reserves the right to charge interest at the rate of 0.75% per month to cover our carrying costs.

15. **<u>Arbitration of Disputes</u>. Any dispute between you and the firm will be arbitrated in Philadelphia by a neutral arbitrator selected in accordance with the Philadelphia Bar Association's client dispute procedures. If for any reason such procedure is unavailable or determined to be inappropriate, then a neutral arbitrator will be selected by the parties. If the parties are unable to reach an agreement, the arbitrator shall be appointed by the United States District Court for the Eastern District of Pennsylvania or the Court of Common Pleas of Philadelphia County in a proceeding to enforce this arbitration provision. The arbitration shall be final, binding and not appealable. You acknowledge that this agreement effects a waiver of**

116871020_1

the right to a trial by a jury or a court. In connection with any such dispute, all claims will be strictly limited to actual and direct economic loss. The parties waive any right to claim consequential or punitive damages. The prevailing party in the resolution of any dispute shall have the right to be reimbursed by the other party for all reasonable fees and expenses, including attorney's fees, incurred in the dispute. (

**(NJ NOTICE REQUIRED)**

16. <u>Withdrawal from Representation</u>. The attorney/client relationship is one of mutual trust and confidence. If you have any questions at all about the provisions of this engagement, we invite inquiries. We encourage our clients to inquire about any matter relating to our engagement or monthly statements that are in any way unclear or appear unsatisfactory. Conversely, any failure on your part to meet your obligation of timely payments under the terms and conditions set forth herein and the engagement letter to which it is attached and incorporated will constitute authorization for the firm to withdraw from representing you and to reveal the terms and conditions set forth herein and the engagement letter to which it is attached and incorporated and any other necessary documents to any court or agency if the same should prove necessary to effect withdrawal.

The representation of a client by the firm is also subject to termination by either party upon reasonable notice for any reason or for no reason. Upon such termination, however, the client will remain liable for any unpaid fees and costs.

17. <u>Privacy</u>. In the course of providing a client with legal services, the firm may receive significant personal/non-public financial information from the client or from other financial advisors at the client's specific instruction. All information that the firm receives from the client or from others at the client's direction will be held in confidence and not released to people outside the firm, except as required in the performance of the firm's services, as agreed to by the client, or as required under an applicable law. In order to protect your nonpublic personal information we maintain physical, electronic and procedural safeguards. We consider all information relating to representation of our clients to be confidential, and it is treated accordingly, as required by the Rules of Professional Conduct.

18. <u>File Retention</u>. Upon conclusion of our engagement we will retain all files and documents we create in connection with our engagement to represent you

    in accordance with our then current file retention policy. If we offer to return to you all or a portion of a file, and you refuse or decline to accept such file contents, we will dispose of such file contents as we determine appropriate.

19. <u>Future Services</u>. The terms and conditions set forth herein and the engagement letter to which it is attached and incorporated will also apply to services rendered for such future matters that the firm and the client mutually agree will be handled by the firm. If, however, such services are substantially different from those set forth herein and the engagement letter to which it is attached and incorporated, either party may request that a new engagement letter be executed, or that the terms hereof be reacknowledged, together with payment of an additional retainer and satisfaction of outstanding invoices. Our undertaking to perform additional services in the future is subject to our firm's customary intake procedures, including conflict checks.

116871020_1