**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SECURITIES AND EXCHANGE COMMISSION,

          Plaintiff,

          - against -

DEVON D. ARCHER,
BEVAN T. COONEY,
HUGH DUNKERLEY,
JASON W. GALANIS,
JOHN P. GALANIS,
GARY T. HIRST, and
MICHELLE A. MORTON,

          Defendants,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ECF Case

No. 16 Civ. 3505 (WHP)


**THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**APPLICATION TO INTERVENE AND FOR A LIMITED STAY OF DISCOVERY**


PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
    of America.

AIMEE HECTOR
BRIAN R. BLAIS
REBECCA MERMELSTEIN
Assistant United States Attorneys

    *- Of Counsel -*

## <u>PRELIMINARY STATEMENT</u>

The United States of America, by and through the United States Attorney for the Southern District of New York ("the Government"), respectfully submits this memorandum in support of its application (i) to intervene in the above-captioned case, pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (ii) to stay (a) depositions, interrogatories, requests for admission, and any other form of discovery that would create statements of any person whom the Government asserts may be called as a witness in the criminal prosecution; (b) production of transcripts of testimony and notes of or memoranda describing interviews with; written statements made or adopted in the course of an interview by; or correspondence concerning interviews of any person whom the Government asserts may be called as a witness in the criminal action; and (c) disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i), until the conclusion of the parallel criminal case, *United States* v. *Jason Galanis et al.*, 16 Cr. 371 (RA) (the "criminal action").

Because no counsel for any of the defendants has entered a notice of appearance in this matter, the Government has contacted, where known, counsel expected to enter a notice of appearance on behalf of a defendant in this matter and, where not known, criminal counsel for each of the defendants in the parallel criminal action in order to ascertain their position on the Government's stay motion in this matter.   Counsel for defendants Devon Archer, Bevan Cooney and Gary Hirst have stated that they oppose the Government's motion for a stay of this matter.   Defendants John Galanis, Hugh Dunkerley and Michelle Morton are represented in the criminal action by attorneys appointed pursuant to the Criminal Justice Act.   These counsel, who are unlikely to appear in this action on their clients' behalf, have each indicated that they

consent on their client's behalf to the Government's motion for a stay.[1]   Jason Galanis, who

does not yet have counsel in the criminal action[2]  and is presently incarcerated at the MCC after

having had his bail revoked in connection with a second criminal action[3], has written to the

Court and stated that he consents to a full stay of this action.    The SEC takes no position on this

request.

    Courts in this district frequently stay civil discovery when there is a parallel criminal

prosecution.    *See, e.g.*, *SEC* v. *Wey*, 15 Civ. 7116 (PKC) (S.D.N.Y. June 9, 2016) (granting

Government's motion for partial stay of aspects of civil discovery that would constitute Jencks

Act material, over objection of multiple defendants); *SEC* v. *Durante et al.*, 15 Civ. 9874 (RJS)

(S.D.N.Y. Mar. 22, 2016) (granting Government's motion for partial stay of aspects of civil

discovery that would constitute Jencks Act material, over one defendant's objection); *SEC* v.

*Tuzman*, 15 Civ. 7057 (AJN) ) Dkt. No. 43, Memorandum and Order (S.D.N.Y. Mar. 1, 2016)

(granting Government's motion for partial stay of aspects of civil discovery that would constitute

Jencks Act material, over one defendant's objection); *SEC* v. *Galanis et al.*, 15 Civ. 7547 (VSB)

(S.D.N.Y. Oct. 21, 2015) (granting Government's motion for partial stay of aspects of civil

discovery that would constitute Jencks Act material, on consent).    In fact, courts in this Circuit

---

[1] It is the Government's understanding that counsel for these defendants will be seeking a full stay of the civil action.

[2] Marion Bachrach, Esq. entered a limited notice of appearance for bail purposes only in connection with Jason Galanis's initial appearance in the criminal action on May 17, 2016.   At the time of the arraignment in the criminal action, which occurred on June 8, 2016, Jason Galanis had not yet retained counsel and Judge Abrams asked the duty CJA attorney to represent Galanis in connection with that proceeding.   At this time, no attorney has entered a notice of appearance on Galanis's behalf in the criminal action, with the exception of Ms. Bachrach as noted above.

[3] Jason Galanis, John Galanis and Gary Hirst are also defendants in a second criminal matter pending before Judge Castel.   *See United States* v. *Jason Galanis et al.*, 15 Cr. 643 (PKC).   That matter is set for trial beginning on September 12, 2016.   Judge Castel revoked Galanis's bail in connection with that matter on May 17, 2016.

and others have often granted complete stays of SEC actions during the pendency of parallel

criminal proceedings, even over a defendant's objection.    *See, e.g.*, *SEC* v. *Shkreli*, *et al*., 15

Civ. 7175 (KAM) (E.D.N.Y. Mar. 22, 2016); *SEC* v. *Dubovoy*, 15 Civ. 6076 (D.N.J. Jan. 29,

2016); *Harris* v. *Nassau County et al.*, 2014 U.S. Dist. LEXIS 94554 at *10 (E.D.N.Y. 2014)

(noting that "[t]he weight of authority in this Circuit indicates that courts will stay a civil

proceeding when the criminal investigation has ripened into an indictment.") (*citing In re Par

Pharm. Sec. Litig*., 133 F.R.D. 12 (S.D.N.Y. 1990)).    A stay is especially appropriate where, as

here, the Government seeks only a limited stay, with respect to discovery that would effectively

be Jencks Act material in the criminal action.

## FACTUAL BACKGROUND

This case, and the parallel criminal action, arise out of the same underlying events.

The facts set forth below are detailed in the complaint and indictment filed in the criminal action,

which were unsealed on May 11, 2016 and May 31, 2016, respectively, and are reflected in the

SEC's complaint in this civil action as well.

The defendants in this matter engaged in a fraudulent scheme to misappropriate the

proceeds of taxable revenue bonds issued by a Native American tribal entity (the "Tribal

Bonds") and to use funds in the accounts of clients of investment advisory firms controlled by

the defendants to purchase the Tribal Bonds, which could not be sold by the clients because of

the absence of a ready secondary market for those bonds.

From August 2014 through April 2015, at the urging and instigation of the defendants,

the Wakpamni Lake Community Corporation (the "Tribal Entity"), an economic development

corporation chartered by the Oglala Sioux tribe, made four issuances of Tribal Bonds, totaling

$63,277,436.    The indentures and related documents that governed the Tribal Bond issuances

specified that the bond proceeds would be given to an annuity provider (the "Annuity Provider") for investment in an annuity. The governing documents further provided that the Annuity Provider, in connection with the annuity, would turn over the funds to an investment manager (the "Investment Manager") who would invest the proceeds on the Tribal Entity's behalf in order to generate sufficient annual returns to enable the Tribal Entity to pay interest on the Tribal Bonds and to receive distributions that would fund various economic development projects that the Tribal Entity wished to pursue.

In fact, the Investment Manager, despite being paid at least $175,000 by an entity controlled by Jason Galanis, never received any of the proceeds of the Tribal Bond issuances. Instead, significant portions of the proceeds were in fact misappropriated by Jason Galanis and John Galanis, with the assistance of Hugh Dunkerley, and used to pay personal expenses. Jason Galanis used more than $8,750,000 of the Tribal Bond proceeds for personal expenses, including payments associated with his home, payments to various law firms, payments to various members of Galanis's family, payments of automobile-related expenses, payments for restaurants and other meals, payments of travel expenses, and payments for clothing and jewelry purchases. John Galanis received approximately $2,300,000 of the Tribal Bond proceeds, which he also used for personal purposes. Other charged defendants also received transfers of funds from the proceeds of the Tribal Bonds.

As part of the scheme, the defendants took control of two investment advisory firms. They installed Michelle Morton as the Chief Executive Officer of these firms and, for a period of time, installed Gary Hirst as the Chief Investment Officer and later Chairman of the Investment Committee of one of the firms. At least $43 million of Tribal Bonds were placed in accounts of the clients of these two investment advisory firms without disclosure to these clients of certain

4

material facts, including that the Tribal Bonds fell outside the investment parameters set forth in the investment advisory contracts of certain of the clients.   In addition, none of the defendants disclosed to the clients of the investment advisory firms they controlled the existence of substantial conflicts of interest inherent in these investments (including, for example, that Dunkerley worked at the broker-dealer serving as the placement agent for the Tribal Bonds, while also serving as an officer of the parent company that owned the two investment advisory firms, while also serving as an officer of the Annuity Provider who received the proceeds of the Tribal Bonds issuances).

In addition, at least $20 million of the proceeds of the first Tribal Bond issuance were recycled and used to purchase more Tribal Bonds.   As a result of this recycling, although the face amount of Tribal Bonds outstanding increased and the amount of interest payable by the Tribal Entity increased, the actual bond proceeds available for investment on behalf of the Tribal Entity did not increase.   The bonds purchased using recycled proceeds were then used to support other business endeavors of the defendants, including, for example, being used to meet the net capital requirements of certain broker-dealers in which the defendants were investors.

A grand jury sitting in the Southern District of New York returned an indictment against the defendants in this matter on May 31, 2016.   The Indictment charged the defendants in this matter with the following charges:

| COUNT | CHARGE | DEFENDANTS |
|---|---|---|
| 1 | Conspiracy to Commit Securities Fraud   (18 U.S.C. § 371) | DEVON ARCHER<br>BEVAN COONEY<br>HUGH DUNKERLEY<br>JASON GALANIS<br>JOHNGALANIS<br>GARY HIRST<br>MICHELLE MORTON |

| 2 | Securities Fraud (15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. § 240.10b-5; 18 U.S.C. § 2) | J DEVON ARCHER<br>BEVAN COONEY<br>HUGH DUNKERLEY<br>JASON GALANIS<br>JOHNGALANIS<br>GARY HIRST<br>MICHELLE MORTON |
|---|---|---|
| 3 | Conspiracy to Commit Investment Adviser Fraud (18 U.S.C. § 371) | JASON GALANIS<br>GARY HIRST<br>MICHELLE MORTON |
| 4 | Investment Adviser Fraud (15 U.S.C. §§ 80b-6 & 80b-17; 18 U.S.C. § 2) | JASON GALANIS<br>GARY HIRST<br>MICHELLE MORTON |

All defendants had been previously arrested on these charges on May 11, 2016 based on a criminal complaint lodged on May 9, 2016, and, with the exception of John Galanis, released on either bond or on personal recognizance later that same day.[4]   John Galanis was detained for two days pending a detention hearing on May 13, 2016, following which he was released pursuant to a bond.   The SEC's complaint in this matter was filed on May 11, 2016.

## ARGUMENT

The Government's requests to intervene and for a limited stay of discovery in this civil action should be granted.   If full-fledged civil discovery were to proceed at this time, there would be a risk of significant interference with the criminal case.   The limited stay requested would not prejudice any of the parties to this civil action; would prevent the circumvention of important limitations on criminal discovery; and would preserve the Court's resources because many of the issues presented by the civil action will be resolved in the criminal action.

## I.      THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE

---

[4] As noted previously, Jason Galanis was thereafter ordered detailed on May 17, 2016.   *See supra* n.2.

6

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'" Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact."   The Government respectfully submits that its application satisfies both of these provisions given the effect this civil proceeding would have on the criminal action and the identity of claims and facts between the parallel actions.

As a general rule, courts "have allowed the government to intervene in civil actions—especially when the Government wishes to do so for the limited purpose of moving to stay discovery."   *Twenty First Century Corp.* v. *LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992); *see also SEC* v. *Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002).   The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter."   *SEC* v. *Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

As an initial matter, intervention is warranted because the Government's interests in upholding the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, none of whom represent the Government's interests with respect to the investigation and enforcement of federal criminal statutes.   *See Bureerong* v. *Uvawas*, 167 F.R.D. 83 (C.D.Cal. 1996) ("the Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . .   Clearly neither the plaintiff or the defendants have this identical interest.").

7

Moreover, a trial in this action in advance of a related criminal trial could impair or impede the Government's ability to protect its interests in the enforcement of federal criminal law. This case and the related criminal case arise from the same alleged scheme to misappropriate tribal funds through the use of captive investment advisors. Holding a civil trial before a criminal trial would create the possibility that there will be two trials covering the same fraudulent acts. This raises the probability that witnesses will be unnecessarily burdened by having to testify twice. In light of those circumstances, the Government respectfully submits that its application to intervene should be granted.

## II.   A LIMITED STAY OF DISCOVERY IS APPROPRIATE

### A.   Applicable Law

This Court has the inherent power to stay discovery in the interests of justice pending the completion of a parallel criminal trial. *See Kashi* v. *Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action.") (internal citations and quotations omitted). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254 (1936)). When considering whether to grant a stay, courts balance the following factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest.

8

*SEC* v. *Treadway*, No. 04 Civ. 3464 (VM) (JCF), 2005 WL 713826, at \*2-\*3 (S.D.N.Y. March 30, 2005) (quoting *In re Worldcom, Inc. Sec. Litig.*, Nos. 02 Civ. 3288, 02 Civ. 4816, 2002 WL 31729501, at \*4 (S.D.N.Y. Dec. 5, 2002)); *see also Volmar Distrib., Inc.* v. *New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (listing similar factors).   "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice."   *Id.*

**B.     Discussion**

Application of these factors here overwhelmingly weighs in favor of the limited stay sought by the Government.

### 1.     *The Extent of Overlap*

That the criminal and civil cases involve nearly identical facts and issues weighs heavily in favor of a stay.   "The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues."   *Volmar Distrib.*, 152 F.R.D. at 39 (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also Tuzman*, 15 Civ. 7057 (AJN), Dkt. No. 43 at 3) (noting that "substantial overlap between the civil and criminal proceedings" weighs in favor of stay); *Parker* v. *Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677, at \*4 (E.D.N.Y. Aug. 27, 2007);; *United States* v. *One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

Here, even a cursory examination of the criminal indictment and the civil complaint reveals that the alleged wrongdoing is essentially the same.   The SEC and criminal actions describe the same alleged scheme to misappropriate the proceeds of the Tribal Bond issuances and

to cause unwitting clients of controlled investment advisory firms to invest in the Tribal Bonds, involving the same participants and the same course of conduct.   In short, the cases involve virtually identical facts, parties, and issues.   As a result, this factor weighs heavily in favor of a stay.

### 2.      Status of the Criminal Case

The return of an indictment in the criminal case is also a factor that weighs in favor of a stay.   *See Tuzman*, 15 Civ. 7057 (AJN), Dkt. No. 43 at 3; *In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment."); *Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al.* v. *Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved."); *see also Hicks* v. *City of New York*, 268 F. Supp. 2d 238, 242 (E.D.N.Y. 2003) ("Indeed, the strongest argument for granting a stay is where a party is under criminal indictment…").   Thus, this factor also militates strongly in favor of a stay.

### 3.      Prejudice to the Parties

No prejudice to the parties will result from the very limited stay requested by the Government.   The Government seeks to stay only (a) depositions, interrogatories, requests for admission, and any other form of discovery that would create statements of any person whom the Government asserts may be called as a witness in the criminal prosecution; (b) production of transcripts of testimony and notes of or memoranda describing interviews with; written

statements made or adopted in the course of an interview by; or correspondence concerning interviews of any person whom the Government asserts may be called as a witness in the criminal action; and (c) disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i), until the conclusion of the parallel criminal case, *United States* v. *Jason Galanis et al.*, 16 Cr. 371 (RA) (the "criminal action").   Because the Government is not seeking a full stay of discovery, the defendants will obtain, in civil discovery, access to voluminous documentary evidence – at least hundreds of thousands of documents spanning millions of pages.   These documents form the backbone of the alleged claims at issue in both this case and the criminal action, so a limited stay will not prevent the defendants from evaluating the evidence and preparing their defense.   In addition, as there is currently no trial date in place, there will be no undue delay in the proceedings as a result of the limited stay.

### 4. *The Public Interest*

Rule 16 of the Federal Rules of Criminal Procedure and Title 18, United States Code, Section 3500 provide that in criminal cases, the statements of Government witnesses shall not be the subject of discovery "until said witness has testified on direct examination" at trial.   Thus, in the criminal action, the defendants would not be entitled to the balance of discovery that the Government is moving to stay until (or, as is the practice in this District, shortly before) trial. The Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the well-founded restrictions that pertain to criminal discovery – restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses.   *See United States* v. *Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act "represents a legislative determination that access to a witness' statements

could be useful in impeaching a witness but was not intended to be utilized in preparation for

trial"); *United States* v. *McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to

see such statements in advance in order to prepare to rebut them is little more than open notice of

an intention to tailor testimony to fit the statement."); *SEC* v. *Nicholas*, 569 F. Supp. 2d 1065,

1070 (C.D.Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and

manufactured evidence, to protect potential witnesses from harassment and intimidation, and to

level the playing field between the government and the defendant, who would be shielded from

certain discovery by the Fifth Amendment").

      Courts in this district have repeatedly endorsed limitations on civil discovery in

recognition of the fact that a civil litigant should not be allowed to use civil discovery to avoid

the restrictions that would otherwise apply in criminal discovery to a criminal defendant.  *See*

*SEC* v. *Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1

(S.D.N.Y. Feb. 27, 2003) (in granting government's motion to stay, court noted: "The principal

concern with respect to prejudicing the government's criminal investigation is that its targets

might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Phillip*

*Morris Inc.* v. *Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28,

1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation

will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are

not entitled under criminal discovery rules."); *Bd. of Governors of the Federal Reserve System* v.

*Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of

the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on

criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in

his criminal trial.'") (quoting *Campbell* v. *Eastland*, 307 F.2d 478, 487 (5th Cir. 1952)); *Nicholas*,

569 F. Supp. 2d at 1070 (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").   Indeed, the rationale underlying a stay is even stronger in an indicted matter, given that a defendant in a charged criminal case will likely invoke his Fifth Amendment rights in the civil case and not participate in the very discovery process he seeks to use affirmatively.   *See, e.g., SEC* v. *Chakrapani*, 2010 WL 2605819 (S.D.N.Y. June 29, 2010) (inviting the Government to renew its motion to stay discovery if the defendant intends to invoke the Fifth Amendment if noticed for a deposition); *Nicholas*, 569 F. Supp. 2d at 1070 (noting when granting full stay that "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants").

Concerns about witness intimidation and the tailoring of testimony apply with equal force to prosecutions of white collar crime.   In *Tuzman*, the Court found that the risk of witness intimidation "weigh[ed] strongly in favor of the requested stay" based, at least in part, on emails and interviews of witnesses evidencing intimidation by the defendant.   *Tuzman*, 15 Civ. 7057 (AJN), Dkt. No. 43 at 5-6.   Here, the Government has evidence that defendant Jason Galanis previously sent threatening text messages to a potential witness in a separate criminal case, *United States* v. *Jason Galanis et al.*, 15 Cr. 643 (PKC), as recently as January 2016.   Galanis called the recipient a "Government fag" and a "low dirty motherfucker."   Additional messages sent by Galanis advised the recipient that Galanis would "pay [him] back" and "teach [him] a lesson" for being disloyal to Galanis's wife, that Galanis would "expose" the recipient and that the recipient

13

should "sleep tight and be worried."    Galanis also sent text messages commenting on the size of a document production made by the recipient, indicating his awareness that the recipient "had contact" with the SEC, and asking the recipient to say hello to his lawyers.

Therefore, in order to avoid circumvention of the criminal discovery restrictions, including the provisions that are designed to prevent defendants from tailoring their testimony and intimidating witnesses, and because the defendants will not in any way be prejudiced in preparing and defending themselves, this factor weighs in favor of the Government's application.

### 5.    *The Interests of the Courts*

Considerations of judicial economy also weigh in favor of granting a stay.    Courts have a strong interest in the efficient resolution of both the criminal and civil cases.    Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil action.    *See SEC* v. *Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding"); *SEC* v. *One or More Unknown Purchasers of Secs. of Global Indus.*, 2012 U.S. Dist. LEXIS 162772, at *12 (S.D.N.Y. Nov. 9, 2012) ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *Twenty First Century Corp.*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered).    Because the criminal case's outcome could directly affect the conduct, scope, and result of the civil proceeding, this factor favors the Government's application.

*          *          *

In sum, and as set forth above, the Government has requested a limited stay of discovery; there is considerable overlap between the parallel proceedings; charges have been filed in the

criminal case; there is no prejudice to the parties from the requested stay; there is a strong public interest in preventing the civil discovery rules from being used to improperly obtain discovery in the criminal case; and judicial economy is ensured by the requested stay.   Therefore, the balance of factors overwhelmingly favors a limited stay of discovery.

## <u>CONCLUSION</u>

For the reasons set forth above, the Government respectfully requests that its application to intervene and for a limited stay of discovery be granted in its entirety, and that the Court so order the proposed order submitted herewith.

Dated: New York, New York
      July 11, 2016

Respectfully submitted,

PREET BHARARA
United States Attorney

By:     ___/s/_____
      AIMEE HECTOR
      BRIAN R. BLAIS
      REBECCA MERMELSTEIN
      Assistant United States Attorneys
      One Saint Andrew's Plaza
      New York, New York 10007
      Telephone: (212) 637-2203/2521/2360
      Facsimile: (212) 637-2452