**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES AND EXCHANGE COMISSION,

        Plaintiff,

     v.

DEVON ARCHER, BEVAN T. COONEY, HUGH
DUNKERLEY, JASON W. GALANIS, JOHN P.
GALANIS, GARY T. HIRST, and MICHELLE A.
MORTON,

        Defendants

16 Civ. 3505 (WHP) (AJP)

Filed Electronically

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF THE U.S.**
**ATTORNEY'S OFFICE TO INTERVENE AND FOR A STAY OF DISCOVERY**

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
(212) 446-2300

*Attorneys for Devon Archer*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 5

ARGUMENT ........................................................................................................... 7

I.       THE USAO HAS FAILED TO MEET ITS BURDEN FOR A STAY ................ 7

      A.    Legal Standard ................................................................................. 8

      B.    The *Louis Vuitton* Factors Weigh Strongly In Favor Of Permitting
           Discovery To Go Forward ............................................................... 9

      C.    The Undefined and Changing Stay Proposed by the USAO Is
           Particularly Inappropriate ............................................................... 24

CONCLUSION........................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Abraham v. Aquilone,*
No. 11 Civ. 5947, 2012 WL 1820869 (S.D.N.Y. May 15, 2012)............................................ 24

*CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.,*
381 F.3d 131 (3d Cir. 2004)........................................................................................................ 8

*EEOC v. Global Horizons Inc.,*
1:11-CV-00257, 2012 WL 874868 (D. Haw. Mar. 13, 2012) ................................................ 20

*FTC v. Johnson,*
No. 2:10-cv-02203-MMD-GWF, 2013 WL 3155311 (D. Nev. June 19, 2013)...................... 19

*Jackson v. Johnson,*
985 F. Supp. 422 (S.D.N.Y. 1997)............................................................................................ 24

*Landis v. N. Am. Co.,*
299 U.S. 248 (1936)..................................................................................................................... 8

*Lizarraga v. City of Nogales.,*
No. 06-cv-474, 2007 WL 215616 (D. Ariz. Jan 24, 2007) ...................................................... 20

*Louis Vuitton Malletier S.A. v. LY USA, Inc.,*
676 F.3d 83 (2d Cir. 2012)................................................................................................ 4, 8, 9, 11

*N.Y. News, Inc. v. Kheel,*
972 F.2d. 482 (2d Cir. 1992)..................................................................................................... 22

*Parallel Civil and Criminal Proceedings,*
129 F.R.D. 201 (1990) ............................................................................................................... 10

*SEC v. ARVCO Capital Research, LLC,*
No. 12-cv-00221, 2013 WL 3779338 (D. Nev. July 16, 2013) ............................................... 11

*SEC v. Beacon Hill Asset Management LLC,*
No. 02 Civ. 8855 (LAK), 2003 WL 554618 (S.D.N.Y. Feb. 27, 2003) .................................. 20

*SEC v. Bradstreet,*
No. CA-95-11647-WD (D. Mass) (Woodlock, *J.*) .................................................................. 20

*SEC v Chakrapani,*
Nos. 09 Civ. 325 & 09 Civ. 1043, 2010 WL 2605819 (S.D.N.Y. June 29, 2010) ....... 10, 16, 19

*SEC v. Cioffi*,
No. 08-CV-2457, 2008 WL 4693320 (E.D.N.Y. Oct. 23, 2008)........................ 9, 13, 16, 18, 19

*SEC v. Constantin*,
No. 11 Civ. 4642, 2012 WL 1195700 (S.D.N.Y. Apr. 9, 2012)................................................ 7

*SEC v. Cuti*,
No. 08 Civ. 08648 (S.D.N.Y.) ................................................................................ 15, 18, 19

*SEC v. Dresser Indus., Inc.*,
628 F.2d 1368 (D.C. Cir. 1980) ........................................................................................ 25

*SEC v. Jones*,
No. 04 Civ. 4385, 2005 WL 2837462 (S.D.N.Y. Oct. 28, 2005) ............................ 9, 12, 14, 25

*SEC v. Kornman*,
No 3:04 Civ. 1803, 2006 WL 1506954 (N.D. Tex. May 31, 2006)........................................ 23

*SEC v. Life Partners Holdings*
No 12-cv-00033 (JRN), ECF No. 7 (W.D. Tex. Aug. 17, 2014)........................................... 17

*SEC v. Oakford Corp.*,
181 F.R.D. 269 (S.D.N.Y. 1998) ................................................................................ 2, 18, 23

*SEC v. O'Neill*,
98 F. Supp. 3d 219 (D. Mass 2015) .................................................................................... 21

*SEC v. Poirier*,
No. 1:97-CV-3478-WBH (N.D. Ga. Feb. 12, 1998)........................................................ 10, 23

*SEC v. Saad*,
229 F.R.D. 90 (S.D.N.Y. 2005) ............................................................................ 9, 14, 18, 23

*SEC v. Sandifur*,
No. C05-1631 C, 2006 WL 3692611 (W.D. Wash. Dec. 11, 2006)................................ passim

*SEC v. Yuen*,
No. 03-cv-4376 (C.D. Cal. Oct. 27, 2003)............................................................... 9, 13, 23, 24

*Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*,
175 F. Supp. 2d 573 (S.D.N.Y. 2001)............................................................................... 8, 24

*Trs. of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*,
886 F. Supp. 1134 (S.D.N.Y. 1995)................................................................................... 12

*United States v. Cutillo*,
    No. 09-CV-9208 (RJS) (S.D.N.Y.) ........................................................................ 2, 18

*United States v. Galanis et al.*,
    No. 16 Cr. 371 (RA) (S.D.N.Y.) ....................................................................... 1, 6, 22

*United States v. Gupta*,
    No. 11 Civ. 7566 (JSR), ECF No. 46 (S.D.N.Y. Mar. 27, 2012) ............................. 5

*United States v. Leasehold Interests in 118 Avenue D*,
    754 F. Supp. 282 (E.D.N.Y. 1990) ....................................................................... 20

*United States v. Martin-Artajo*,
    No. 13 CV 5677 (GBD) (S.D.N.Y.) ...................................................................... 25

*United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*,
    811 F. Supp. 802 (E.D.N.Y. 1992) ....................................................................... 24

*United States v. Reyes*,
    No. 06 Cr. 0556 (N.D. Cal.) (Breyer, *J.*) ........................................................... 9, 13

*Volmar Distribs., Inc. v. N.Y. Post Co.*,
    152 F.R.D. 36 (S.D.N.Y. 1993) .............................................................. 8, 9, 10, 11

**Rules**

Fed. R. Civ. P. 1 ...................................................................................................... 24

Federal Rule of Civil Procedure 26(a)(1)(A)(i) ................................................... 3, 25

**Statute**

12 U.S.C. § 3402(2) .................................................................................................. 6

Devon Archer, by and through his attorneys Boies Schiller & Flexner, LLP, respectfully submits this memorandum of law in opposition to the motion (the "Motion") of the United States Attorney for the Southern District of New York (the "USAO") to intervene and to stay discovery in this action pending the resolution of the parallel criminal proceedings in *United States v. Jason Galanis, et al.*, No. 16 Cr. 371 (RA) (the "Related Criminal Case").

**<u>PRELIMINARY STATEMENT</u>**

The USAO has put forward no good reason to stay this action.  Indeed, by the USAO's logic, every civil case would be stayed pending the resolution of a parallel criminal prosecution. But that is not the law.  Under the balancing test used in this Circuit, a civil action should only be stayed when the movant meets its burden of proof by showing that the harm of civil discovery outweighs the prejudice to the litigants and the public interest caused by the stay.

Devon Archer, who is a defendant in both this SEC enforcement action and in the Related Criminal Case, has the right to defend himself.  The SEC has levelled extraordinarily serious accusations against Mr. Archer, and the mere existence of those allegations have already had a tangible adverse effect on his reputation and business.  Now, however, the USAO seeks to effectively stay this action in full – despite claiming to seek a "limited" stay, the Motion contemplates a virtual complete stay on these proceedings, including even initial disclosures – and deny Mr. Archer any ability to address the SEC's allegations.

But it was the government that brought this case:  The SEC chose to initiate this civil action, and it did so in exceedingly close coordination with the USAO.  As the USAO has acknowledged, its criminal investigation largely piggy-backed on the SEC's civil investigation, with its evidence consisting of documents "principally that were subpoenaed by the SEC."

Having chosen to initiate simultaneous and parallel proceedings against Mr. Archer, the government should have to live with the consequences of that strategic choice.  With civil a lawsuit comes civil discovery – a fact that both government agencies were well aware of at the time these cases were initiated – and there is no reason that Mr. Archer and the other defendants should not have access to the range of discovery provided for under the Federal Rules of Civil Procedure so that they might prepare a defense.  In similar circumstances, courts in this district frequently deny the USAO a stay.  *See, e.g.*, *SEC v. Oakford Corp.*, 181 F.R.D. 269, 272-73 (S.D.N.Y. 1998) (Rakoff, *J.*) ("[T]o the extent that the defendants' discovery requests simply result in the happenstance that in defending themselves against the serious civil charges that another government agency has chosen to file against them they obtain certain ordinary discovery that will also be helpful in the defense of their criminal case, there is no cognizable harm to the government in providing such discovery beyond its desire to maintain a tactical advantage."); *see also* Hearing Tr. at 6:25-7:4, Apr. 21, 2010, *United States v. Cutillo*, No. 09-CV-9208 (RJS) (S.D.N.Y.) (Sullivan, J.) (attached as Exhibit  F)[1] ("I can understand why the government wishes to preserve the tactical advantage that it would have in a stand-alone criminal case but I don't think that's particularly relevant to the analysis for a stay in this case.  . . . I don't find that persuasive.").

If granted, moreover, the requested stay would give the USAO a pocket veto, allowing it to block any efforts by the defendants to discover evidence concerning "any person whom the Government asserts may be called as a witness in the criminal prosecution," including even

---

[1] Except as otherwise noted, all references to exhibits in this memorandum refer to exhibits to the Declaration of Matthew L. Schwartz, dated July 25, 2016.

initial disclosures under Rule 26(a)(1)(A)(i).  That is, the USAO seeks to stay discovery

pertaining to various individuals that the USAO does not even identify – no doubt an expansive

list that will expand further every time the defendants attempt to take discovery of someone new.

In that way, the defendants' right to defend themselves would become a game of legal

Battleship, where the defendants will be forced to guess at witnesses until they are told they have

"hit" a witness from the secret unapproved list – except in this version of the game, the USAO is

free to move the pieces around mid-contest, adding witnesses to the list as the defendants seek to

gain evidence about or from them.  This is not the "limited" stay that the USAO contends it is.

        Worse, no such limitation would be imposed upon the SEC, which would be free to take

discovery as it pleases, or – to the extent that the SEC cares to do third party discovery against

someone that the USAO might claim to be a potential witness – to use the other processes

available to it to do an end run around the requested stay.  This is not a merely theoretical

concern.  Even as this case is pending – and contrary to its own Enforcement Handbook – the

SEC continues to issue administrative subpoenas to third parties requesting information about the

defendants and the conduct alleged in this action and the Related Criminal Case.  To date,

however, the USAO has not even produced such information in the Related Criminal Case.

Without civil discovery, there is a material risk that the government agencies will continue to

hide behind procedural formalities to deny the defendants information to which they are plainly

entitled under the Rules of Civil Procedure.  In that way, the USAO's stay motion will confer a

material litigation advantage on the SEC, an agency that already had the luxury of conducting formal discovery for months prior to bringing its case.[2]

In this Circuit, courts look to a multi-factor balancing test to determine whether civil discovery should be stayed pending a criminal prosecution. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. 2012). Necessarily, therefore, the USAO's implicit suggestion that there is some *per se* rule against civil discovery is incorrect. To the contrary, a discovery stay is an extraordinary remedy, available only when the USAO can carry its burden of demonstrating a particularized showing of prejudice that outweighs the unfairness and prejudice of the stay to the defendants' ability to contest and challenge the charges.

The USAO has made no such showing. The only prejudice identified in the USAO's Motion is purely speculative, and in the absence of a clear and articulable harm, courts in this circuit are disinclined to confer on the government what amounts to an undeserved tactical advantage.

Finally, no small weight should be given to the fact that the government – the USAO and the SEC alike – created the situation that they now complain about. The USAO coordinated its investigation with the SEC for the better part of a year, and then coordinated the unsealing of its criminal complaint with the filing of this SEC case, issuing simultaneous press releases and acknowledging each other's efforts. Now, when it no longer suits their purposes to proceed jointly, the USAO seeks to shut this case down. But as Judge Rakoff correctly noted: "That

---

[2] It appears, however, that the SEC chose not to use the typical discovery tools available to it during its investigation. For example, according to its lawyers, the SEC took the testimony of only a single witness before bringing this case. All other witnesses were interviewed informally, presumably many in conjunction with the USAO and its law enforcement partners.

4

separate government agencies having overlapping jurisdiction will cooperate in the factual

investigation of the same alleged misconduct makes perfect sense; but that they can then

disclaim such cooperation to avoid their respective discovery obligations makes no sense at all."

Order, *United States v. Gupta*, No. 11 Civ. 7566 (JSR), ECF No. 46 (S.D.N.Y. Mar. 27, 2012)

(Rakoff, *J.*) (attached as Exhibit G).

This is a situation entirely of the government's making.  A discovery stay – especially a

roving stay that the USAO gets to unilaterally define and re-define – would significantly

prejudice Mr. Archer and the other defendants by impinging on their rights to defend themselves

from the SEC's serious allegations.  The USAO's motion should be denied, and the parties

should engage in discovery in this civil case under the Federal Rules of Civil Procedure – the

discovery process that the SEC initiated by filing this case in conjunction with the USAO's

Related Criminal Case – so that Mr. Archer and the other defendants may defend themselves.

## BACKGROUND[3]

On May 11, 2016, the SEC and USAO simultaneously announced that they had initiated

actions against the same seven defendants in connection with substantially the same alleged

conduct.  Both agencies issued press releases, *see* Exs. A and B, and the case received a fair

degree of public attention, *see, e.g.*, Christopher M. Matthews, "Seven Accused of Selling Fake

Bonds," *Wall Street Journal* (May 11, 2016)*, available at* http://on.wsj.com/2aoYSV2 (attached

as Exhibit C).

---

[3]     The USAO's Motion spends several pages detailing the allegations against the
defendants.  We do not respond to them here because they are irrelevant to the outcome of the
Motion.

This was, of course, not a coincidence.  The SEC and USAO had been investigating this matter together for months.  In their press releases, the USAO "thanked the SEC," and the SEC stated that it "appreciates the assistance of the U.S. Attorney's Office for the Southern District of New York," and its law enforcement partners.

Indeed, at the initial conference in the Related Criminal Case, the USAO made clear just how much it had relied upon the SEC's investigation.  The AUSA stated that "[t]he bulk of the discovery is all going to come in a single database.  It's documents principally that were subpoenaed by the SEC from numerous different custodians.  That database contains about 85,000 documents, not pages, documents, and is about 75 gigabytes in size."  Hearing Tr. 23:15-19, June 8, 2016, *United States v. Galanis et al.*, No. 16 Cr. 371 (RA) (S.D.N.Y.) (attached as Exhibit D) .  That database, which has now been produced to the defendants in the Related Criminal Case, contains more than half a million pages of documents produced by more than 50 custodians.  Moreover, the USAO has stated that it will produce an additional approximately two *tera*bytes of information that the SEC seized from the investment advisors involved in this case. *See id.* at 24:22.  In contrast, the remainder of the criminal discovery – that is, the materials that the USAO procured through its own criminal investigation – consists of approximately 15,000 pages of documents produced principally by a handful of banks and the defendants themselves, as well as copies of the criminal complaint, indictment, and a court order.[4]  Indeed, when the parties in this action held their Rule 26(f) conference, counsel for the SEC remarked that

---

[4]     Upon information and belief, the only reason that the USAO subpoenaed those banks rather than relying on the SEC to do that, too, is that the account-holders would have been entitled to receive notice of an SEC administrative subpoena under the Right to Financial Privacy Act, 12 U.S.C. § 3402(2), whereas no such notice is required for grand jury subpoenas.

document discovery from the SEC would be "coterminous" with the USAO's production in the criminal case, and repeatedly adverted to the AUSA's remarks at the arraignment.  *See* Schwartz Decl., ¶ 8.

## ARGUMENT[5]

The Court should deny the Motion for two simple reasons.  *First*, the USAO has not met, and cannot meet, its burden of showing a particularized harm of civil discovery, let alone one that will outweigh the prejudice to the defendants.  *Second*, even if the USAO's argument were persuasive, its Motion is impossible to assess without knowing what specific information it seeks to protect.

## I.      THE USAO HAS FAILED TO MEET ITS BURDEN FOR A STAY

The USAO's stay motion should be denied because it has failed to demonstrate a real and substantial prejudice from discovery, let alone one that outweighs the substantial prejudice to the defendants' ability to respond to the serious allegations in this case.  "The Constitution rarely will require a stay in the event of parallel criminal and civil proceedings – rather, a stay in such cases has been characterized as an 'extraordinary remedy.'" *SEC v. Constantin*, No. 11 Civ. 4642, 2012 WL 1195700, at *1 (S.D.N.Y. Apr. 9, 2012) (citation omitted).  Indeed, "Courts regularly deny stays when civil regulators have worked directly in concert with the criminal prosecutors during the investigation and the Government has used parallel proceedings to its

---

[5]      Mr. Archer takes no position on that aspect of the Motion in which the USAO seeks to intervene.  In other cases in which courts have denied a USAO's motion to stay, however, they have also denied intervention as moot.  If the Court denies the USAO's application for a stay, it should also deny the application to intervene.  *See Yuen*, slip op. at 13-14 (attached as Ex. I) ("As it appears that the Government asked to intervene for the sole purpose of requesting a stay, and because this Court has denied the stay that was requested, the Government's Motion to Intervene is DENIED . . . .").

advantage." *SEC v. Sandifur*, No. C05-1631 C, 2006 WL 3692611, at *2 (W.D. Wash. Dec. 11, 2006).

### A.    Legal Standard

To be granted a stay, the movant – the USAO here – bears the burden of demonstrating "undue prejudice . . . or interference with his constitutional rights." *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 575 (S.D.N.Y. 2001) (omission in original; internal quotation marks omitted); *see also CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 139 (3d Cir. 2004) (noting that the party seeking the stay "must state a clear countervailing interest to abridge a party's right to litigate"); *accord Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."). Additionally, stays of discovery are only appropriate "when the interests of justice *require* such action." *Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (emphasis supplied).

Courts in the Second Circuit consider six factors in determining whether a stay of discovery in a civil case is warranted: (1) the overlap of issues between the civil and criminal case; (2) "the status of the case"; (3) "the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay"; (4) "the private interests of and burden on the defendants"; (5) the interest of the court; and (6) "the public interest." *Louis Vuitton Malletie*, 676 F.3d at 99.

As the USAO acknowledges, the initiation of a criminal prosecution does not automatically – or even presumptively – justify a stay: "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." USAO Br. at 9 (quoting *Volmar Distribs.*, 152 F.R.D. at 39) (internal quotation marks omitted). The *Louis Vuitton*

8

factors are "no more than  .   .   . a rough guide for the district court as it exercises its discretion." *Louis Vuitton*, 676 F.3d at 99.  Indeed, the district court's concern should be determining "the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court."  *Id.*

### B.   The *Louis Vuitton* Factors Weigh Strongly In Favor Of Permitting Discovery To Go Forward

The *Louis Vuitton* factors weighs heavily against a stay in this case.  The prejudice to Mr. Archer and the other defendants resulting from a stay would be palpable and manifold, whereas the USAO's claimed prejudice is entirely speculative.

The USAO claims that: (1) the broader scope of civil discovery would prejudice the criminal case, *see* USAO Br. at 12-13; (2) with access to civil discovery, the defendants might "tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses," *id.* at 11; and (3) staying civil discovery is more efficient and would preserve the Court's resources, *id.* at 14.

As discussed below, these arguments – which are entirely generic – fall far short of showing substantial and particularized prejudice.  To the contrary, when the USAO and the SEC have coordinated their investigations and intentionally filed their respective criminal and civil actions simultaneously, courts frequently refuse to stay civil discovery.  *See, e.g.*, *SEC v. Cioffi*, No. 08-CV-2457, 2008 WL 4693320, at *1-2 (E.D.N.Y. Oct. 23, 2008) (Block, *J.*) (denying the USAO's request to stay simultaneously filed SEC actions); *SEC v. Jones*, No. 04 Civ. 4385, 2005 WL 2837462, at *1-2 (S.D.N.Y. Oct. 28, 2005) (Sweet, *J.*) (same); *SEC v. Saad*, 229 F.R.D. 90, 92 (S.D.N.Y. 2005) (Rakoff, *J.*) (same); Hearing Tr., Oct. 4, 2006, *United States v. Reyes*, No. 06 Cr. 0556 (N.D. Cal.) (Breyer, *J.*) (same) (attached as Exhibit H); *SEC v. Sandifur*, No. C05-1631C, 2006 WL 3692611, at *2-3 (W.D. Wash. Dec. 11, 2006) (Coughenour, *J.*) (same); *SEC v. Yuen*, No. 03-cv-4376, slip op. at 14 (C.D. Cal. Oct. 27, 2003) (Pfaelzer, *J.*)

(same) (attached as Exhibit I); *SEC v. Poirier*, No. 1:97-CV-3478-WBH, slip op. at 5 (N.D. Ga. Feb. 12, 1998) (Hunt, *J.*) (same) (attached as Exhibit J).

### 1. The Fact That This Case Has Some Overlap with the Criminal Case, or That the Criminal Case Has Been Indicted, Does Not Support a Stay

There is no doubt that the SEC's case and the Related Criminal Case have a fair degree of overlap in terms of the underlying allegations.  The USAO calls this the "most important factor at the threshold," USAO Br. at 9 (quoting *Volmar Distribs.*, 152 F.R.D. at 39) (internal quotation marks omitted), which it is.  But the USAO puts the emphasis on the wrong words:  The extent of overlap is not the most important *factor*,[6] it is the "most important factor *at the threshold*."

If there were not substantial overlap between the civil and criminal cases, the USAO's Motion would be dead on arrival; the overlap itself does not justify a stay.  To the contrary, as Judge Conner explained in *Volmar Distributors*, the "basic goal" of the balancing test is to "avoid prejudice."  152 F.R.D. at 39; *see also SEC v Chakrapani*, Nos. 09 Civ. 325 & 09 Civ. 1043, 2010 WL 2605819, at *10 (S.D.N.Y. June 29, 2010) ("Prejudice to the parties is by far the most important of the five factors." (citing *Volmar*, 152 F.R.D. at 39)).  As discussed further below, the balance of the prejudices weighs strongly in favor of denying a stay.

Likewise, the fact that the criminal case has proceeded to the indictment stage does not independently justify a stay.  In the first instance, courts put weight on the status of the criminal

---

[6]     To the contrary, the same source that *Volmar* relied upon to call the first factor the most important "at the threshold" goes on to describe another factor as the most important overall.  *Compare Volmar Distribs.*, 152 F.R.D. at 39 (describing overlap as the "most important factor at the threshold" (quoting Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (1990)), *with Parallel Civil and Criminal Proceedings*, 129 F.R.D. at 205 ("The effect of a stay of the civil case upon the 'public interest' is perhaps the most important factor in the equation, albeit the one hardest to define.").

case principally to ensure that the criminal *defendant's* rights are protected, not to protect the government.

> The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter.   While the Constitution does not mandate a stay in such circumstances, denying a stay might undermine a defendant's Fifth Amendment privilege against self-incrimination.   Refusing to grant a stay might also expand the rights of criminal discovery beyond the limits of Rule 16(b) of the Federal Rules of Criminal Procedure [which pertains to discovery *from*, not by, a criminal defendant], expose the basis of the defense to the prosecution in advance of trial, or otherwise prejudice the case.

*Volmar Distribs.*, 152 F.R.D. at 39 (citations omitted).  Where, as here, a criminal defendant is prepared to navigate civil discovery, these concerns drop away.  But the USAO seeks to turn this authority on its head, using it in an attempt to stay discovery to protect its own case, to the detriment of Mr. Archer and the other defendants.

Even so, courts frequently deny post-indictment stays in cases where the prejudices are not tangible and severe.  *See, e.g.*, *Louis Vuitton*, 676 F.3d at 101 n.17 (collecting cases in support of proposition that courts have not "treated the fact that an indictment of the defendants has been handed up at the time of their making a motion for a stay of the civil proceedings as requiring that the stay be entered"); *SEC v. ARVCO Capital Research, LLC*, No. 12-cv-00221, 2013 WL 3779338, at *7 (D. Nev. July 16, 2013) (denying a post-indictment stay and observing that "it is completely permissible to conduct these [civil] proceedings simultaneously, even if it

means that one of the defendants will be forced to choose whether or not to invoke the Fifth Amendment in this action" (citation omitted)).[7]

These decisions illustrate just how extreme and concrete the prejudice to the moving party must be in order to justify a stay. If a criminal defendant may be compelled over her objection to proceed with a civil case – even though she may face the decision of either having to testify in a civil deposition or invoke her Fifth Amendment rights and bear the adverse inference that may come with it in the civil case – then the government certainly should here.

### 2. The Interests of the Parties Overwhelmingly Favor Proceeding Expeditiously with the Civil Litigation

A discovery stay will prejudice Mr. Archer in at least three material respects. *First*, he will be unable to defend himself against the SEC's serious allegations. *Second*, the likely duration of the Related Criminal Case – and thus the stay requested by the USAO – will do irreparable damage to Mr. Archer's reputation and business interests. And *third*, the requested stay is entirely one-sided, preventing Mr. Archer from taking discovery to defend himself from the SEC's allegations, but not limiting the SEC – which continues to collect evidence from third parties outside of the Federal Rules of Civil Procedure.

---

[7]     As the USAO observes, one of the reasons that the issuance of an indictment may weigh in favor of a stay is that criminal proceedings typically are resolved quickly. *See* USAO Br. at 10 (citing *Trs. of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)). In this case, however, several of the defendants – not including Mr. Archer – have been indicted in a totally separate criminal case, which is scheduled for a multi-week trial in September. As a result, defense counsel for those defendants have informed Judge Abrams in the Related Criminal Case that they would likely not be able to focus on the discovery until after that trial, in October or November. As a result, the next pretrial conference in the Related Criminal Case is not scheduled until November, and there is no trial date or motions schedule. In short, this is not a case in which the Related Criminal Case is likely to be resolved quickly, so one of the usual reasons for considering whether an indictment has been issued actually weighs in favor of denying the stay.

### i.       A Stay Would Deny Mr. Archer His Right To Defend Himself

As is its custom, the SEC has stated that it takes no position as to the USAO's stay

application.  USAO Br. at 2.  Where "the SEC has not taken a position," the parties' interests are

"in having a 'timely opportunity to clear [their] names[s]' in both cases.'" *Cioffi*, 2008 WL

4693320, at *1 (alterations in *Cioffi*) (quoting *SEC v. Jones*, 2005 WL 2837462, at *2).  As

Judge Breyer has explained, fairness requires courts to favor the interests of defendants in

proceeding with parallel civil and criminal cases, and to deny requests to stay the civil cases:

> I don't understand the logic if the SEC is filing charges against
> people and then saying, "Oh, by the way, don't do any discovery,
> we'll wait a year or so."
>
> When I say I don't understand the logic, what I am saying is I
> don't really appreciate the fundamental fairness of that approach or
> the fairness of that approach.  The decision whether or not to file
> charges remains with the SEC, but not when you're the plaintiff
> can you dictate how the defense should proceed and when the
> defense should proceed.
>
> When you file the charges, you are deciding the defense should
> proceed . . . .

Hearing Tr. at 5:9-20, Oct. 4, 2006, *Reyes* (attached as Ex. H).

As a matter of law, Mr. Archer has an overriding interest in the expeditious resolution of

the serious civil accusations of securities fraud against him.  It is well-established that where a

defendant is "facing very serious civil charges," he has "a strong interest in a timely resolution."

*Sandifur*, 2006 WL 3692611, at *3; *see also Yuen*, slip op. at 5 ("Denying the stay thus serves

any potential interest the Defendants' [*sic*] have in seeing their names cleared.") (attached as Ex.

I).

13

ii.     A Stay Would Irreparably Prejudice Mr. Archer's Reputation
and Business Interests

Although defending himself from the SEC's charges would by itself be sufficient reason

not to grant a stay, Mr. Archer also has strong economic and reputational interests in moving

forward this this civil case.  The prejudice to Mr. Archer, moreover, will be deepened by the

expected length of the Related Criminal Case, and thus the requested stay.

Aside from his general interest in defending himself from the SEC's serious accusations

of securities fraud, Mr. Archer's "reputation and credibility have been called into question" by

these charges, and pending litigation "continues to cloud his future career and personal life."

*Jones*, 2005 WL 2837462, at *2 (citing cases).  Again, Mr. Archer's concern is not speculative.

The charges in this case and in the Related Criminal Case have been widely publicized,

tarnishing Mr. Archer's reputation.  *See* Schwartz Decl. ¶ 4 (collecting media coverage).

Moreover, as a result of the initiation of this case and the Related Criminal Case and the

attendant publicity, Mr. Archer has lost numerous business opportunities, has resigned from the

Boards of Directors of several companies, and has been asked to divest his interest in several

investments.  *See* Schwartz Decl. ¶5.

The longer this case remains pending, the more entrenched and irreparable these injuries

become.  For that reason, courts in this district are clear that under these circumstances, Mr.

Archer "deserves a *timely* opportunity to clear his name." *Jones*, 2005 WL 2837462, at *2

(emphasis supplied); *see also, e.g.*, *Saad*, 229 F.R.D. at 92 ("[T]he defendants are not just facing

a criminal indictment; they are also facing a very serious SEC civil action, and they are thus fully

entitled to the *timely* discovery that federal law grants them in defending such an action."

(emphasis supplied)).  But the length of the requested stay in this case further exacerbates the

prejudice to Mr. Archer.  As described above, *see supra* n. 7, the next pretrial conference in the

14

Related Criminal Case is not until November, and there is no trial date or motions schedule, making it likely that the Related Criminal Case – and thus the stay requested by the USAO – will drag out for a year or more.  Under the USAO's proposal, only then will this case even get started.  But the harms to Mr. Archer from being unable to defend himself from the SEC's allegations in the meanwhile will potentially be disastrous.  Indeed, to many businesses, the SEC's charges are in many ways more serious than the USAO's, and the pendency of this case remains a stain on his reputation and ability to do business.

> ### iii.    A Stay Would Prejudice Only Mr. Archer and the Other Defendants, Not the SEC, Which Continues to Conduct Discovery Outside of the Federal Rules

Finally, a stay would be particularly inequitable in this case because it would be entirely one-sided.  The USAO proposes to stay discovery under the Federal Rules of Civil Procedure concerning certain unidentified witnesses, cutting off any ability of the defendants to take discovery in this case.  But the SEC would not labor under the same restrictions, as it continues to take extensive discovery *outside* of the Federal Rules.  Wholly apart from what is produced by the USAO for criminal discovery, a stay would deprive defendants of large amounts of evidence to which they are entitled.

Indeed, not only does the SEC persist in requiring third parties to respond to its outstanding administrative subpoenas in this case, but the SEC also continues to require third parties to respond to its litigation subpoenas in *SEC v. Atlantic Asset Management*, No. 15-cv-9764 (WHP).  As the Court is aware, that case was initiated by the SEC to place Atlantic Asset Management – one of the investment advisors involved in this case – into receivership.  In advance of a hearing on the SEC's application, the SEC obtained an *ex parte* order permitting it to take expedited, early discovery.  Although Atlantic consented to the receivership within a

matter of days thereby mooting the need for early discovery, the SEC issued a flurry of broad

subpoenas and it continues to require third parties to comply with them. *See* Schwartz Decl.

¶ 10-11. The USAO's Motion, however, does not reach the *Atlantic* case, *see id.* ¶ 9, leaving the

SEC free to continue to collect evidence.

Moreover, the SEC has apparently now opened a brand new investigation, and in the

guise of that brand new investigation is seeking discovery about the defendants and claims in this

action. The defendants would not even have been aware of the SEC's actions in this regard – the

USAO has not produced any of the material gathered by the SEC's new investigation in

discovery in the Related Criminal Case – if a third party had not mistakenly file the wrong

subpoena on the public docket. On June 20, 2016, counsel for third party Timothy Anderson

filed a motion for a protective order because the SEC was requiring him to produce documents

pursuant to an administrative subpoena, notwithstanding the fact that the SEC's investigation had

already culminated in the filing of this case. *See id.* ¶ 10. Although the text of Anderson's

application referred to a February 2016 subpoena in the Atlantic investigation, what was actually

attached was a brand new subpoena – issued in June 2016, after this case had been filed – which

nonetheless called for evidence involving the entities and individuals involved in this action. *See*

*id.*, Exhibit N.

The SEC's conduct in this respect is arguably itself a violation of the Federal Rules and

its own internal guidance. The SEC's Enforcement Manual recognizes that investigative

subpoenas should not be used once the SEC brings an enforcement action:

> [S]taff should not use investigative subpoenas solely to conduct
> discovery with respect to claims alleged in the pending complaint.
> A court might conclude that the use of investigative subpoenas
> solely to conduct discovery is a misuse of the SEC's investigative
> powers and circumvents the court's authority and the limits on
> discovery in the Federal Rules of Civil Procedure.

SEC Enforcement Manual at 32.  Indeed, the SEC has been sanctioned for engaging in such tactics.  *See, e.g.,* Order, *SEC v. Life Partners Holdings, Inc.*, No. 12-cv-00033-JRN, ECF No. 47 (W.D. Tex. 2012 Aug. 17, 2014) (finding SEC violated numerous provisions of the Federal Rules and imposing sanctions after SEC took "investigative" deposition of a third party witness) (attached as Exhibit O).  But assuming without conceding for purposes of the Motion that the SEC could legitimately collect evidence against the defendants related to the allegations in this case outside of the Federal Rules, it would make the stay requested by the USAO utterly one-sided.  Under the requested stay, the SEC could take depositions of third parties and not only would the defendants not be able to cross-examine those witnesses, the defendants would not even receive copies of the transcripts.  The prejudice to the defendants from these tactics overwhelms any asserted basis for a stay.

### 3.  Civil Discovery Would Not Prejudice the Government's Criminal Case or Otherwise Have an Adverse Impact on the Public Interest.

The USAO purports to identify two considerations weighing in the "public interest" factor: the restrictions on criminal discovery, and the possibility of witness tampering or obstruction.  These concerns are entirely generic, and the second is speculative, to boot.  Absent a particularized and real prejudice that outweighs the harm to the defendants, the USAO cannot meet its burden on this Motion.

The USAO's first argument seeks to prohibit the defendants from obtaining civil discovery because it is broader than criminal discovery.  USAO Br. at 11.  Civil discovery certainly is broader than criminal discovery, but it was of course the government's choice to bring both actions at the same time, rather than pursuing the criminal prosecution first.  It is therefore not surprising that courts have routinely rejected the argument that this situation – a situation present in literally every stay motion involving parallel civil and criminal proceedings –

is prejudicial to the government.  *See*, *e.g.*, *Oakford Corp.,* 181 F.R.D. at 272-73 ("[T]o the extent that the defendants' discovery requests simply result in the happenstance that in defending themselves against the serious civil charges that another government agency has chosen to file against them they obtain certain ordinary discovery that will also be helpful in the defense of their criminal case, there is no cognizable harm to the government in providing such discovery beyond its desire to maintain a tactical advantage."); *Saad*, 229 F.R.D. at 91 ("[I]t is strange[] . . . that the U.S. Attorney's Office, having closely coordinated with the SEC in bringing simultaneous civil and criminal actions against some hapless defendant, should then wish to be relieved of the consequences that will flow if the two actions proceed simultaneously."); Hearing Tr. at 6:25-7:4, Apr. 21, 2010, *Cutillo* (attached as Ex. F) ("I can understand why the government wishes to preserve the tactical advantage that it would have in a stand-alone criminal case but I don't think that's particularly relevant to the analysis for a stay in this case. . . . I don't find that persuasive."); *Sandifur*, 2006 WL 3692611, at *3 (W.D. Wash. Dec. 11, 2006) (denying stay because "the United States worked directly with the SEC and voluntarily chose to institute both civil and criminal actions at the same time"); Hearing Tr. at 58:2-5, Jan 20, 2009, *SEC v. Cuti*, No. 08 Civ. 08648 (S.D.N.Y.) (Koeltl, J.) (attached as Exhibit K) ("[I]f the government chooses this path, it is responsible for bringing the situation upon itself and must accept the necessary costs of that choice.").

The USAO's generic claim of prejudice should be further discounted because it is in a situation of the government's own making.  "Courts are justifiably skeptical of blanket claims of prejudice by the government where – as here – the government is responsible for the simultaneous proceedings in the first place." *Cioffi*, 2008 WL 4693320, at *1.  Thus, "[h]ad the Government thought this was a serious problem, it could have easily avoided it by waiting until

after the criminal matter was resolved to institute civil proceedings." *Sandifur*, 2006 WL 3692611, at *3.  *See also FTC v. Johnson*, No. 2:10-cv-02203-MMD-GWF, 2013 WL 3155311, at *3 (D. Nev. June 19, 2013) ("Whatever strategic advantage the government may retain from the criminal discovery rules is forfeited when it decides to bring a concurrent civil proceeding, in the absence of any specific prejudice that may result from their simultaneous running"); *Chakrapani*, 2010 WL 2605819, at *7 ("[T]he government and SEC could have engaged in a cost-benefit analysis that weighed the benefits of simultaneously initiating civil and criminal proceedings against the cost of possibly losing the government's tactical discovery advantage in the criminal case.").[8]  "[T]here are many legitimate reasons why the government may choose to institute civil and criminal proceedings against [a] defendant at the same time . . . But, if the government chooses this path, it is responsible for bringing the situation upon itself and must accept the necessary costs of that choice."  Hearing Tr. at 57:24-58:5, Jan 20, 2009, *Cuti* (attached as Ex. K).

    Simply put, the generic concern that defendants will discover additional information in a civil case as opposed to a criminal one – especially when the government chose to initiate both

---

[8]    In such cases, courts frequently reject discovery stays absent specific objections to particular requests for discovery.  *Cioffi*, 2008 WL 4693320, at *1 ("As matters now stand, the U.S. Attorney's request for a stay exists in a vacuum:  Neither defendant has answered the civil complaint and no discovery requests have been propounded.  In this context – or, more accurately, absence of context – the Court cannot engage in any meaningful balancing of the competing interests at stake"); *id.* at *2 ("Without specific discovery requests and specific objections before it, the Court simply cannot evaluate the validity and strength of the government's concerns relative to the defendants' interest in a prompt resolution of the allegations against them.").  As Judge Block explained, "the limits on criminal discovery do not exist for their own sake," but rather, "they are intended to guard against specific concerns."  *Id.* at *2.  Thus the "far more sensible approach is to allow discovery to go forward, but to allow the U.S. Attorney to object to particular requests."  *Id.*

cases simultaneously – does not constitute prejudice, let alone support a stay. *See United States v. Leasehold Interests in 118 Avenue D*, 754 F. Supp. 282, 287 (E.D.N.Y. 1990) ("Mere conclusory allegations of *potential* abuse or simply the *opportunity* by the claimant to improperly exploit civil discovery . . . will not avail on a motion for a stay." (emphasis in original)); *see also EEOC v. Global Horizons Inc.*, 1:11-CV-00257, 2012 WL 874868, at *4 (D. Haw. Mar. 13, 2012) (ruling that the government's "conclusory assertions that the criminal case might be jeopardized because civil discovery rules are more broad than criminal discovery rules" were "not sufficient to establish the 'substantial prejudice,' that is necessary to warrant granting a stay" (citation omitted)); Hearing Tr. at 17:6-7, Oct. 16, 1995, *SEC v. Bradstreet*, No. CA-95-11647-WD (D. Mass) (Woodlock, *J.*) (attached as Exhibit L) (dismissing "this kind of sterile incantation of the usual concerns about advance criminal discovery"); *Poirier*, slip op. at 3-4 (attached as Ex. J) ("[A] conclusory statement by the government that defendants will abuse the discovery process to obtain information to which they would not be entitled in the criminal case will not support the imposition of a stay."); *Lizarraga v. City of Nogales*, No. CV-06-474, 2007 WL 215616, at *3 (D. Ariz. Jan. 24, 2007) ("Conclusory allegations of potential abuse or simply the opportunity for the plaintiff to exploit civil discovery are generally unavailing to support a motion for stay.").[9]

---

[9]     The USAO cites to a number of cases that it claims stand for the general proposition that "a civil litigant should not be allowed to use civil discovery to avoid the restrictions that would otherwise apply in criminal discovery to a criminal defendant." USAO Br. at 12. But none of the cited cases actually says that. Instead, in each of the cited cases, the court was able to make a specific finding of prejudice to the government based on the facts before it. For example, in *SEC v. Beacon Hill Asset Management LLC*, the defendants had consented in principle to a stay. No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003). However, because the criminal investigation was ongoing and no indictment had been issued, they did want to use civil

In short, the USAO must demonstrate an actual, cognizable harm, specific to the case before it.  The USAO is able to make no such showing here, relying only on broad but legally insufficient boilerplate.  But as one court recently explained:

> As a final note, the government cites a number of cases in which courts have been willing to grant the sort of stay it requests here. The Court will always evaluate such requests with an eye toward the facts and circumstances of individual cases and defendants. But in this case, the government is largely concerned about having to reveal discovery earlier than it might otherwise have to do. This is a strategic and tactical consideration that has little to do with the public interest or the interests of the defendants.
>
> If the government and the SEC choose to bring parallel civil and criminal cases close in time to each other, then each entity must be prepared to go ahead with its case on a usual schedule. The SEC and the government cannot pursue a strategy that allows them to take advantage of the benefits of dual prosecutions, but then complain when the defendants, too, find ways to benefit from the otherwise very burdensome task of having to defend on two fronts at the same time. Further, the evidence supporting an indicted criminal case ought to be able to survive scrutiny, and the government should not be so invested in withholding information until disclosure is required—after all, the goal is a just resolution in both the civil and criminal cases, and there is no doubt that confidence in an outcome is highest where the evidence is known and can be tested.

*SEC v. O'Neill*, 98 F. Supp. 3d 219, 223-24 (D. Mass. 2015).

The USAO's only other basis for claiming prejudice is the spectre of witness tampering and obstruction.  While the USAO is perhaps correct that these are not necessarily illegitimate concerns in white collar cases, there is no basis for such concerns here.  Indeed, the only factual

---

discovery for the narrow purpose of discovering what documents the SEC had shared with the USAO.  Not surprisingly, the court found this to be inappropriate because it would effectively chill collaboration between the two agencies and afford the defendants an advantage in the pending criminal investigation.  *See id.*

basis provided for the USAO's concerns is that Jason Galanis allegedly sent text messages to someone the USAO identifies as a potential witness in another criminal case.  USAO Br. at 13-14.  Even assuming that the text messages described by the USAO constitute witness intimidation, Galanis is now detained and is awaiting sentencing in that other case, having pleaded guilty last week, *see* Schwartz Decl. ¶ 13 – a development that substantially neutralizes the threat perceived by the USAO.[10]

The USAO makes no particularized claims with respect to any of the other defendants, and certainly not with respect to Mr. Archer.  To the contrary, the USAO has specifically disclaimed any suspicion that Mr. Archer would be involved in inappropriate contact with witnesses, and alone among the defendants, Mr. Archer and Mr. Cooney are explicitly permitted to be in contact with one another  as part of their bail packages.  Moreover, alone among the defendants, Mr. Archer is permitted as a condition of his bail to travel without restriction throughout the United States, and Judge Abrams has already twice approved Mr. Archer's foreign travel (albeit over the USAO's objection).  In short, there is no legitimate basis – and certainly none has been asserted – to believe that Mr. Archer would be involved in any act of obstruction or witness tampering.

Finally, even assuming for the sake of argument that the USAO could establish prejudice, any such prejudice would not outweigh the interests of Mr. Archer in defending himself from the SEC's serious allegations or the other prejudices identified above.

---

[10]    At a recent appearance before Judge Abrams, a lawyer appointed to represent Galanis for that hearing only explained that he had not yet hired counsel because, while he is in prison, "every phone call is monitored . . . every e-mail is monitored. The Government is looking at every single thing he does."  Hearing Tr. at 5:18-22, July 11, 2016, *United States v. Galanis et al.*, No. 16 Cr. 371 (RA) (S.D.N.Y.) (attached as Exhibit E).

## 4.   The Court Has a Strong Interest in Denying the USAO's Motion.

The Court's own interests also strongly weigh against a stay.  Where, as here, the USAO and the SEC intentionally filed parallel and contemporaneous actions, but apparently have no intention of actually pursuing the civil claim,[11] they have "misuse[d] . . . the processes of the Court."  *See Oakford Corp.*, 181 F.R.D. at 273 (Rakoff, J.) ("To use the federal courts as a forum for filing serious civil accusations that one has no intention of pursuing until a parallel criminal case is completed is a misuse of the processes of these courts.").  Consequently, "[c]ourts regularly deny stays when civil regulators have worked directly in concert with the criminal prosecutors during the investigation and the Government has used parallel proceedings to its advantage." *Sandifur*, 2006 WL 3692611, at *2 (citing *SEC v. Kornman*, No 3:04 Civ. 1803, 2006 WL 1506954 (N.D. Tex. May 31, 2006); *Saad*, 229 F.R.D. 90; *Yuen*, slip op. at 5, 11-13 (attached as Ex. I)); *see also Poirier*, slip op. at 5 (attached as Ex. J) ("[T]he Court finds that the fact that it was not the defendants, but rather two agencies of the same government, that instituted these parallel proceedings militates against the imposition of a stay in this case.").

Judge Rakoff, in rejecting a similar motion, "put the SEC and the United States Attorney's Office on notice that such doubtful practices will receive strict scrutiny." *Oakford Corp.*, 181 F.R.D. at 273.

---

[11]    The USAO claims that it is seeking a "limited" stay.  But whatever the limits of that stay – which of course are both unknown and movable – it is plain that this action cannot meaningfully progress while it is in place.  Important aspects of documentary discovery will be off-limits, and any depositions that the USAO may permit to go forward will necessarily involve only the most peripheral witnesses.  The USAO proposes that the SEC will not even be permitted to make initial disclosures to the defendants.  *See* USAO Br. at 1.  Plainly the parties could not engage in dispositive motion practice, expert discovery, or even contemplate setting a trial date if the requested stay were put in place.

The USAO contends that "[c]onsiderations of judicial economy also weigh in favor of granting a stay." USAO Br. at 14. However, there are at least equally important countervailing concerns – the swift administration of justice and clearing of the Court's docket – that militate against the granting of such stays. *See, e.g.*, *Jackson v. Johnson*, 985 F. Supp. 422, 425 (S.D.N.Y. 1997) ("[J]udicial efficiency would not be achieved by a stay of this action."); *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 811 F. Supp. 802, 808 (E.D.N.Y. 1992) ("[C]onvenience of the courts is best served when motions to stay proceedings are discouraged."); *Yuen*, slip op. at 9-10 (attached as Ex. I) ("This Court also has a strong interest in maintaining its case schedule and proceeding through its docket. . . . Effective management of this Court's docket requires the Court to usher cases through the civil process quickly and fairly.").

In short, the stay the USAO proposes would impair the public's "interest in prompt resolution of cases, particularly where, as here, there would be 'no predictability as to when the case would return to the Court's active docket.'" *Abraham v. Aquilone*, No. 11 Civ. 5947, 2012 WL 1820869, at *3 (S.D.N.Y. May 15, 2012) (quoting *Sterling*, 175 F. Supp. 2d at 580). The judiciary's interests are furthered by the "just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, a policy at odds with the stay requested by the USAO.

### C.    The Undefined and Changing Stay Proposed by the USAO Is Particularly Inappropriate

For the reasons just given, the Court should deny the USAO's Motion at this time. But at a minimum, the Court should require the USAO to provide clear contours to the stay it is seeking. Indeed, the lack of specificity in the USAO's present Motion makes it particularly problematic.

24

The USAO's motion seeks to prevent discovery concerning "any person whom the Government asserts may be called as a witness in the criminal action."  USAO Br. at 1.  But not only do they not identify those people, they seek to prevent the SEC from identifying anyone who might have discoverable information, as the SEC is obliged to do pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i).  *Id.*  As a result, to the extent that the USAO claims it is seeking anything other than a complete stay of these proceedings, it proposes to leave the defendants in the absolute dark, unable to take discovery from or involving key witnesses, and with no guidance from the SEC as to who even their most insignificant witnesses might be.  In similar circumstances, the USAO has been required to identify with specificity which witnesses it wishes its proposed stay to apply to.  *See, e.g.*, Hearing Tr. at 74:10-75:5, May 8, 2015, *United States v. Martin-Artajo*, No. 13 CV 5677 (GBD) (S.D.N.Y.) (Daniels, *J.*) (attached as Exhibit N) (requiring USAO to identify a list of no more than ten witnesses against whom stay might apply).

If the USAO persists in seeking a blanket stay on virtually all proceedings in this case, it should at the very least be required to do the same so that the Court and the parties can undertake an informed analysis, and so that the Court may consider the availability of more narrowly-tailored remedies.  *See SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) (en banc) (holding that district courts must determine whether to stay civil proceedings, postpone discovery, or impose protective orders and conditions "in the light of the particular circumstances of the case"); *Jones*, 2005 WL 2837462, at *2 (denying stay, extending discovery by 90 days and permitting USAO to make specific objections to particular discovery requests).

## CONCLUSION

For the foregoing reasons, the Court should deny the USAO's motion in its entirety.

Dated: July 25, 2016                              Respectfully submitted,


    /s/ Matthew L. Schwartz
Matthew L. Schwartz
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
(212) 446-2300

*Attorneys for Devon Archer*

26