**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

              - against -

DEVON D. ARCHER,
BEVAN T. COONEY,
HUGH DUNKERLEY,
JASON W. GALANIS,
JOHN P. GALANIS,
GARY T. HIRST, and
MICHELLE A. MORTON,

                Defendants,

           ECF Case

           No. 16 Civ. 3505 (WHP)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**REPLY MEMORANDUM OF LAW OF THE UNITED STATES**
**OF AMERICA IN FURTHER SUPPORT OF ITS APPLICATION**
**TO INTERVENE AND FOR A LIMITED STAY OF DISCOVERY**

           PREET BHARARA
           United States Attorney for the
           Southern District of New York
           Attorney for the United States
               of America.

BRIAN R. BLAIS
AIMEE HECTOR
REBECCA MERMELSTEIN
Assistant United States Attorneys

      - *Of Counsel* -

## PRELIMINARY STATEMENT

The United States of America, by and through the United States Attorney for the Southern District of New York ("the Government"), respectfully submits this reply memorandum of law in further support of the Government's motion to intervene in the above-captioned civil case (the "Civil Action") and for a limited stay of certain discovery in the Civil Action because of the pendency of the parallel criminal case, *United States* v. *Jason Galanis et al.*, 16 Cr. 371 (RA) (the "Criminal Action").   Specifically, the Government has moved to stay (1) depositions, interrogatories, requests for admission, and any other form of discovery that would create statements of any person whom the Government asserts may be called as a witness in the Criminal Action; (2) production of transcripts of testimony and notes of or memoranda describing interviews with; written statements made or adopted in the course of an interview by; or correspondence concerning interviews of any person whom the Government asserts may be called as a witness in the Criminal Action; and (3) disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i), until the conclusion of the Criminal Action.

Defendant Devon Archer opposes the Government's motion for a limited stay.[1]   Notably absent from Archer's response is any representation that he will not invoke his Fifth Amendment rights.   That is not an accident.   Indeed, Archer – and the other co-defendants in this matter – will surely invoke the Fifth Amendment if discovery is sought from them.   Archer thus seeks the benefit of full discovery, including depositions of the Government's criminal trial witnesses, despite the fact that the Fifth Amendment will shield Archer from similar questioning and

---

[1] Defendants Bevan Cooney and Gary Hirst have joined Archer's opposition.   In contrast, defendants Hugh Dunkerley, Jason Galanis, John Galanis and Michelle Morton have advised the Court that they consent to a full stay of this action pending disposition of the related criminal matter.

despite the near certainty, as a practical matter, that no civil trial will be held before the

conclusion of the criminal trial.    That lopsided approach to civil discovery is contrary to law,

and the parade of horribles posited by Archer, in which he is somehow rendered unable to defend

himself in this matter because of the requested stay, will simply not occur.    As a result, the

Government's request for a limited stay of discovery should be granted.[2]

## ARGUMENT

Archer opposes the grant of a limited stay in this matter for several reasons.    First, he

asserts that a stay would interfere with his right to defend himself in the Civil Action and remedy

purported harms to his reputational and economic interests.    (Br. 13-15).    Second, he argues

that the Government would suffer no prejudice in the Criminal Action from a denial of the

requested stay.    (Br. 17-22).    Finally, Archer argues that the timing of the Criminal Action

exacerbates the prejudice he suffers from a stay of discovery.    (Br. 24-25).    Each of Archer's

contentions is misplaced.    Because Archer will certainly invoke the Fifth Amendment – and,

indeed, has done so already[3] – if subpoenaed for a deposition, Archer's proposal that discovery

proceed in this matter will lead to asymmetric discovery in which he can obtain, in unfettered

fashion, information from the expected trial witnesses in the Criminal Action, while being

---

[2] Archer characterizes the Government's proposed stay as a "roving stay that the USAO gets to unilaterally define and re-define."   (Br. 5).   First, the proposed stay sought by the Government is substantially more limited than the complete stay often granted in parallel circumstances.   *See* cases cited at pages 7-8, *infra*.   Second, the limited stay sought by the Government here closely parallels stays granted by other courts in this district.   *See, e.g.*, *SEC* v. *Tuzman*, No. 15 Civ. 7057 (AJN) (Order, dated March 1, 2016, docket entry 43 at 7) (staying "(1) Rule 26(a)(i)(A) discovery; (2) Depositions, interrogatories, and requests for admission; and (3) production of transcripts of SEC testimony and notes of interviews of any person whom the United States Attorney's office certifies may be called as a witness in the criminal case.").

[3] The Government understands that Archer advised the SEC, and submitted a declaration indicating, that he would invoke his Fifth Amendment rights in response to a subpoena issued by the SEC, during its investigation of this matter, compelling Archer to provide sworn testimony to the SEC.

shielded by the Fifth Amendment from providing any information himself.    As a result of

Archer's invocation of the Fifth Amendment, any trial in the Criminal Action will almost

certainly proceed before any trial in this matter, and, following any trial of the Criminal Action,

Archer would then have access to full discovery in this matter before being required to defend

himself at trial.    Conversely, the Government will potentially be prejudiced in the Criminal

Action if discovery in this matter proceeds apace because Archer and his co-defendants will gain

access to the anticipated trial testimony of Government witnesses in the Criminal Action before

they would be entitled to receive such information under the rules governing criminal cases,

raising the specter of tailored defenses and witness tampering.    Finally, the Court presiding over

the Criminal Action has made clear that she will set a trial date at the next conference in that

matter, thus ensuring that the Criminal Action will be tried in a timely fashion and that any

prejudice resulting from the passage of time will be minimal.    Archer's proffered rationales for

opposing the requested stay all therefore fail.

       This Court has the inherent authority to stay the Civil Action.    *See Landis* v. *N. Am. Co.*,

299 U.S. 248 (1936).    In determining whether to grant a stay in similar cases, district courts

have utilized a balancing test that considers the following factors: (1) the overlap of issues

between the civil and criminal case; (2) "the status of the case"; (3) "the private interests of the

plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the

delay"; (4) "the private interests of and burden on the defendants"; (5) the interest of the court;

and (6) "the public interest."    *Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 99 (2d

Cir. 2012).    However, the Second Circuit has observed that such tests serve only as a "rough

guide," and do not replace a district court's "studied judgment as to whether the civil action

should be stayed based on the particular facts before it and the extent to which such a stay would

work a hardship, inequity, or injustice to a party, the public or the court."   *Louis Vuitton*, 676

F.3d at 99.   A balancing of those factors here – along with a consideration of the equities, and in

particular the need to prevent asymmetrical discovery and to prevent witness intimidation – make

it clear that the limited stay requested by the Government is appropriate.

## I.        Courts in this District Have Imposed Stays in Parallel Circumstances

Archer argues that a balancing of the *Louis Vuitton* factors compels a denial of the

Government's motion for a limited stay.   (Br. 9-24).   Archer is wrong.   As an initial matter,

Archer's opposition ignores the reality that it is the continuation of full-fledged discovery in the

Civil Action – not the limited stay proposed by the Government – that will lead to asymmetric

discovery with the potential to prejudice the Criminal Action.   Archer's Fifth Amendment right

to avoid self-incrimination will almost certainly shield Archer from participating in certain

discovery, including sitting for a deposition during which he would be questioned at length about

his involvement in the conduct at issue in both the Civil Action and the Criminal Action.   If

discovery in the Civil Action proceeds, Archer will be able to depose the witnesses the

Government intends to call at trial in the Criminal Action and thereby obtain their statements

well before the deadlines otherwise set by the Jencks Act.   Conversely, because of Archer's

Fifth Amendment rights, the SEC will be unable to obtain testimony from Archer and his

co-defendants.   As a practical matter, given Archer's Fifth Amendment considerations, and

those of his co-defendants, it is nearly certain that no civil trial will take place in advance of the

criminal trial.   *See, e.g.*, *SEC* v. *Tuzman*, No. 15 Civ. 7057 (AJN) (Order, dated March 1, 2016,

Dkt. Entry 43 at 5) ("[T]he Court finds it highly likely that Tuzman would invoke his Fifth

Amendment right against self-incrimination during discovery, rendering discovery incomplete and

one-sided until the criminal proceedings have ended.   This asymmetry would prevent meaningful

progress from being made to complete discovery to resolve this lawsuit and would permit Tuzman to use witness testimony to shape his defense to the criminal charges.").

Accordingly, the only plausible reason Archer is seeking asymmetrical discovery is to obtain material to assist in the criminal trial – for instance, by garnering witness statements now, well in advance of a criminal trial, which he can use to tailor his defense in that action.[4]   As Judge Baer observed in *SEC* v. *Adondakis*, 12 Civ. 409 (HB), a case in which the defendants sought immediate depositions even though they acknowledged they were not prepared to proceed with the civil trial, "it seems clear that the defendants are simply looking for information to be used in the criminal trial."   (Order, dated May 21, 2012, Dkt. Entry 57, at 2).   Because the same motivation is at play here, the limited stay sought by the Government is appropriate.

The public interest restrains such use of civil discovery mechanisms to circumvent the well-founded limitations on criminal discovery, thereby enforcing the Federal Rules of Criminal Procedure and its animating principles.   *See United States* v. *Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial."); *United States* v. *McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The

---

[4]  Archer contends that, if a stay is granted, discovery will be asymmetric because the SEC continues to use various types of discovery unavailable to Archer and his co-defendants.   (Br. 15-17).   The SEC has submitted a letter to the Court addressing the allegations regarding the SEC's discovery practices.   (Docket Entry 51).   As the Government understands the situation, certain third parties suspended their production of documents pursuant to subpoenas issued by the SEC before commencement of the SEC's enforcement actions because of still-to-this-date unspecified privilege claims by Archer.   Archer also has apparently failed to produce to the SEC documents it produced to the Government in response to grand jury subpoenas calling for substantially the same documents sought in subpoenas issued by the SEC.   In light of Archer's recalcitrance to delineate the nature of his privilege claims and to produce requested documents, it is disingenuous at best for him to now assert that the SEC is somehow transgressing the discovery rules by continuing to insist on full compliance with its subpoenas.

claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *SEC* v. *Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").[5]

For these reasons, judges in this District have frequently granted government requests to limit discovery in a parallel civil action in order to prevent the civil discovery rules from being subverted into a device for improperly obtaining discovery in a criminal proceeding.  *See, e.g.*, *SEC* v. *Tuzman*, No. 15 Civ. 7057 (AJN) (S.D.N.Y.) (Order, dated March 1, 2016, Dkt. Entry 43) (granting limited stay); *SEC* v. *Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (same); *SEC* v. *Doody*, 186 F. Supp. 2d 379, 381-82 (S.D.N.Y. 2002) (same); *Phillip Morris Inc.* v. *Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (same); *Bd. of Governors of the Federal Reserve System* v. *Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) (same); *United States* v. *One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966).

Indeed, greater relief than that sought by the Government here has been approved by many courts.  Most recently, in *SEC* v. *Shkreli*, an Eastern District of New York civil action with

---

[5]  Archer makes much of the fact that the Government and the SEC brought proceedings in parallel.  (*See* Br. at 1-2, 4-5, 9, 17-20).  As a practical matter, were the "SEC to forego civil enforcement proceedings in deference to criminal prosecutions, numerous violations would become time-barred during the pendency of the criminal case."  *Nicholas*, 569 F. Supp. 2d at 1070.  Moreover, as the Supreme Court has explained, it would "stultify enforcement of federal law" to require an administrative agency to choose between recommending a matter for criminal prosecution or deferring civil proceedings.  *United States* v. *Kordel*, 397 U.S. 1, 11 (1970).  In fact, such an argument "overlooks the important purpose of the SEC to protect the integrity of the public markets and ensure truthful disclosures."  *Nicholas*, 569 F. Supp. 2d at 1070.

parallel criminal charges in that district, the Government obtained a complete (as opposed to limited) stay of civil discovery until the conclusion of criminal trial proceedings, over the objections of the defendants in the SEC's civil action.   *See SEC* v. *Shkreli*, No. 15 Civ. 7175 (KAM), 2016 WL 1122029, at * 7 (E.D.N.Y. Mar. 22, 2016) ("The substantial overlap of the issues in the two actions; the post-indictment status of the criminal case; the SEC's lack of opposition to the government's proposed stay; the court's interest in the efficient resolution of the two proceedings; and the strong public interest in vindication of the criminal law all weigh in favor of a stay of the SEC's civil action.").   *See also SEC* v. *Durante*, No. 15 Civ. 9874 (RJS) (S.D.N.Y.) (Dkt. Entry dated March 23, 2016) (granting full stay of discovery over the objection of at least one defendant); *SEC* v. *Dubovoy*, No. 15 Civ. 06076 (MCA-MAH) (D.N.J.) (Dkt. Entry 240) (granting a full stay of civil discovery over the objection of certain defendants in the civil action); *SEC* v. *One or More Unknown Purchasers of Securities of Global Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012) (granting full stay of discovery for six months over defendant's objection).

Furthermore, even judges who have declined to grant a stay at the outset of a case have thereafter stayed discovery where: (a) it is clear that a defendant intends to invoke his Fifth Amendment rights and not participate in the very discovery process he seeks to use affirmatively; or (b) the witnesses the defendant seeks to depose could credibly assert their Fifth Amendment rights, testify for the Government in the criminal trial, or both.   *See, e.g.*, *SEC* v. *Chakrapani*, Nos. 09 Civ. 325 (RJS) and 09 Civ. 1043 (RJS), 2010 WL 2605819, at *11 (S.D.N.Y. June 29, 2010) (inviting the Government to renew its motion to stay discovery pending completion of the criminal trial if the defendant or witnesses invoked the Fifth Amendment if noticed for deposition); *SEC* v. *Steinberg*, No. 13 Civ. 2082 (HB) (S.DN.Y.) (Dkt. Entry 21) (granting limited

stay in the first instance and, later, allowing depositions only of witnesses the Government did not

intend to call at trial); *SEC* v. *Adondakis*, No. 12 Civ. 409 (HB) (S.D.N.Y.) (Dkt. Entry 57) (same);

*SEC* v. *Gupta*, No. 11 Civ. 7566 (JSR), 2011 WL 5977579, at *1 (S.D.N.Y. Nov. 30, 2011)

(holding that depositions in the parallel civil actions should only be allowed where the deponents

were "persons the Government has indicated it is unlikely to call as witnesses at the forthcoming

criminal trial.").[6]

       Both circumstances are present here.   Archer cannot credibly deny that he will assert his

Fifth Amendment right if noticed for a deposition in this case, or perhaps even if he is required to

answer or respond to requests for admissions and interrogatories.   While this is his right, Archer

should not be allowed to use his inevitable assertion of the Fifth Amendment to shield himself

from participating in discovery in the Civil Action while nonetheless taking asymmetrical

discovery himself.   Moreover, given the significant overlap in issues between this matter and the

Criminal Action, Archer is likely to seek to depose the Government's potential criminal trial

witnesses, raising additional Fifth Amendment considerations.   As one district court noted (in

granting a full stay of a parallel civil proceeding), "[t]he specter of parties and witnesses invoking

their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce

scores of documents and witness testimony only to be precluded from gathering reciprocal

discovery from the defendants." *Nicholas*, 569 F. Supp. 2d at 1070.

---

[6] Archer cites to *Gupta* as support for the proposition that the Government and the SEC cannot
disclaim any cooperation between them in order to avoid their respective discovery obligations.
(Br. 4-5).   Contrary to Archer's citation in his brief, however, that particular quotation of Judge
Rakoff is from an Order issued in Gupta's criminal case, *not* the civil matter filed against him by
the SEC, and concerned the Government's obligation to review SEC memoranda memorializing
jointly conducted interviews for possible *Brady* material, not the propriety of a stay of the SEC's
civil action.   *See United States* v. *Gupta*, 11 Cr. 907 (JSR) (Dkt. Entry 44 at 1).   In fact, as noted
above, in the SEC's civil action against Gupta, Judge Rakoff *did* stay depositions of all witnesses
except those of witnesses the Government was unlikely to call in Gupta's criminal trial.

In fact, the defendant's own authority either fails to support or actively undermines his request.   First, two of the cases cited by Archer involve requests for a complete stay of discovery, relief not requested here.   *See SEC* v. *Saad*, 229 F.R.D. 90 (S.D.N.Y 2005) (denying request for a complete stay of discovery); *SEC* v. *Cioffi*, No. 08 Civ. 2457, 2008 WL 4693320 (E.D.N.Y. Oct. 23, 2008) (same).   *SEC* v. *Chakrapani* also fails to support the asymmetrical discovery Archer seeks.   In *Chakrapani*, after denying an initial request for a stay primarily because Chakrapani was not a party to the criminal proceeding, Judge Sullivan invited the Government to renew its stay motion upon the invocation of the Fifth Amendment by either the defendant in the criminal proceeding, Joseph Contorinis, or a witness: "Of course, if Contorinis or other relevant witnesses invoke their Fifth Amendment privileges not to participate in civil discovery, the Court's analysis regarding the propriety of a discovery stay might well be altered . . . . To the extent that the process is compromised by the legitimate invocation of a constitutional privilege during discovery, the balance of interests could turn in favor of a discovery stay pending completion of Contorinis's criminal trial."   2010 WL 2605819, at *11.   Given that the civil and criminal actions in *Chakrapani* concerned substantially overlapping issues, as is the case here, the assertion of the Fifth Amendment by the defendant and certain witnesses was inevitable.   Indeed, that reality swiftly intervened.   One week after Judge Sullivan issued his decision in *Chakrapani*, he ordered the parties to appear for a status conference regarding a deposition notice served on a cooperating witness likely to invoke the Fifth Amendment and the effect of "[d]efendant's refusal to participate in discovery." (No. 09 Civ. 1043, Order dated July 6, 2010, Dkt. Entry 125, at 1).   Following that conference, the Court endorsed a discovery schedule specifying that "[n]o depositions shall commence until the conclusion of the trial in the criminal case." (No. 09 Civ. 1043, Order dated Aug. 4, 2010, Dkt. Entry 131, at 2).   *See also SEC* v. *Cioffi*, No. 08 Civ. 2457(FB) (E.D.N.Y.)

(Dkt. Entries 19, 38 and 40) (denying a stay in the first instance, and then staying all depositions after the defendants advised the SEC that they would assert their Fifth Amendment right); *SEC* v. *Adondakis*, No. 12 Civ. 409 (HB), 2012 WL 10817377, at *1 (S.D.N.Y. May 21, 2012) (same).[7]

In sum, in light of the carefully constructed limitations on criminal discovery, which are designed to, among other things, prevent defendants from tailoring their defense to the Government's evidence, as well as the near certainty that Archer and others will invoke their Fifth Amendment rights, thus delaying any civil trial until after the conclusion of the Criminal Action, a limited stay of discovery is particularly warranted here.

## II.    Witness Concerns Counsel in Favor of a Stay

As the Government argued in its opening brief, one reason to stay parallel civil proceedings is to avoid the early disclosure of information that would not normally be available until the late stages of a criminal case, in order to limit the potential for witness intimidation and the concealment or destruction of evidence.   *See* Mem. of Law in Supp. of Gov't Mot. for a Limited Stay of Discovery ("Gov't Mem.") at 11-14; *see also*, *Global Indus., Ltd.*, 2012 WL 5505738 at *6 (noting that the U.S. Attorney's Office had highlighted "specific serious risks of prejudice to the Criminal Case" including the "risk that the targets of the investigation will use civil discovery to further their attempts to conceal their activities by attempting to manufacture or destroy evidence

---

[7] Archer cites to *United States* v. *Martin-Artajo*, No. 13 Civ. 5677 (GBD) (S.D.N.Y.) as support for the proposition that "in similar circumstances, the USAO has been required to identify with specificity which witnesses it wishes its proposed stay to apply to."   (Br. 25).   However, *Martin-Artajo* presents circumstances that could not be more different than the circumstances present here.   In *Martin-Artajo*, the two defendants charged in the criminal case were located abroad.   Requests for the extradition of both defendants were denied by courts in their respective home jurisdictions.   Thus, *Martin-Artajo* presented the rare circumstance where the SEC's civil enforcement action was likely to proceed *before* any criminal trial.   Even in that circumstance, the Court was sufficiently solicitous of the impact that unfettered civil discovery might have on any future criminal trial to allow the Government to object to the taking of a certain number of depositions.

11

or to intimidate witnesses"); *Nicholas*, 569 F. Supp. 2d at 1072 (criminal rules are "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment"); *Nakash* v. *United States Dep't of Justice*, 708 F. Supp. 1354, 1366 (S.D.N.Y. 1988) ("When the Government requests such a stay, it is usually because of concerns that (1) the broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence; (2) the revelation of the identity of prospective witnesses may create the opportunity for intimidation; and (3) the criminal defendants may unfairly surprise the prosecution at trial with information developed through discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants".); *Campbell* v. *Eastland*, 307 F.2d 478, 487 n.12 (5th Cir. 1962) (same).   Archer is highly dismissive of such concerns, contending that "there is no legitimate basis . . . to believe that Mr. Archer would be involved in any act of obstruction or witness tampering."   (Br. 22).

As an initial matter, there is no requirement that the Government make a particularized showing that a defendant might tamper with witnesses or evidence in order for this factor to weigh in favor of a stay.   Courts have found that the mere potential for such corruption of a criminal case counsels in favor of a stay even when there is no evidence that the parties to the civil case might engage in improper activities.   *See, e.g.*, *Nicholas*, 569 F. Supp. 2d at 1072 & n.8 (identifying the potential for tampering with witnesses or evidence as a factor weighing in favor of a stay of a parallel SEC proceeding, while specifically noting that "the Court does not suggest that the Defendants seek civil discovery for an illegal or unethical purpose"); *accord United States* v. *McCarthy*, 292 F. Supp. 937, 942 (S.D.N.Y. 1968) ("The claimed need to see [witness] statements

in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement").   However, where courts have found that there is evidence of a defendant's potential misconduct, that factor weighs even more strongly in favor of a stay.   *See, e.g.*, *Global Indus., Ltd.*, 2012 WL 5505738 at *6 (finding it "compelling" that a corporate defendant who was alleged to have been formed to conceal evidence might seek to conceal or destroy evidence, or intimidate witnesses, based on discovery in the civil case, and finding this to be a factor weighing in favor of a complete stay).

Here, there is specific evidence that a defendant in the Civil Action engaged in efforts to tamper with or threaten a witness.   As noted in the Government's initial moving papers, the Government has evidence that defendant Jason Galanis previously sent threatening text messages to a potential witness in an unrelated criminal matter pending before Judge Castel.   *See* Gov't Mem. at 13-14.   The Government presented this evidence to Judge Castel in a proceeding at which it sought revocation of Galanis's bail.[8]   Archer maintains that any threat posed by Galanis is mitigated because Galanis is now detained in connection with the matter pending before Judge Castel.   (Br. 21-22).   Of course, Galanis still has access to telephones and to email while incarcerated and has a family member who is not detained, but who is also a defendant in this action.   In addition, since the time the Government has filed its initial moving papers in this matter, it has developed evidence that certain defendants in this matter (not including Archer) fabricated documents to be provided to the Government and the SEC in response to subpoenas issued by each during the investigation of this matter.   Even if Archer himself does not tamper with witnesses or otherwise obstruct the Criminal Action, so long as one of his co-defendants takes

---

[8] Judge Castel revoked Galanis's bail, but specifically disclaimed reliance on the text message evidence presented by the Government in making the revocation determination.   *See United States* v. *Galanis*, No. 15 Cr. 643 (PKC) (Dkt. Entry 184, at 9).

such action, the Criminal Action risks being compromised.   In the face of evidence that one of the defendants in this matter specifically engaged in potentially obstructive conduct on a previous occasion and further evidence that certain defendants engaged in efforts to obstruct the ongoing investigations of the conduct at issue in this matter, the interest of the Government and the Court in protecting the integrity of the Criminal Action weighs heavily in favor of the limited stay sought by the Government.

### III.    Archer's Prejudice Concerns Are Overstated

Archer's complaints of prejudice that would result from the proposed limited stay, (Br. 12-17), are overstated.   First, because the Government is not seeking a full stay of discovery, Archer will obtain, in civil discovery in this matter and in criminal discovery as part of the Criminal Action, ready access to voluminous documentary evidence – tens of thousands of documents spanning hundreds of thousands of pages.   Archer concedes that he has already received a substantial volume of documentary material as part of the Government's discovery production in the Criminal Action.   (Br. 6) (noting the production by the Government of "more than half a million pages of documents produced by more than 50 custodians" along with the expected production of at least two terabytes of additional documentary material).   These documents form the backbone of the securities fraud claims at issue in both this case and the Criminal Action, and will allow Archer and his co-defendants to begin preparation for the Civil Action while the Criminal Action is ongoing.[9]

---

[9] As Archer notes in his opposition, the Government is producing to the defendants in the Criminal Action, as part of its obligations under Federal Rule of Criminal Procedure 16, documents obtained by the SEC from various custodians during the SEC's investigation of this matter.   (Br. 6.)

Second, Archer's stated concern that his failure to quickly resolve the Civil Action will harm his "economic and reputational interests" is misdirected.  (Br. 14).  As discussed above, given Archer's Fifth Amendment considerations, the Civil Action will almost certainly not be resolved while the Criminal Action is ongoing, and Archer cannot plausibly claim that he is suffering greater reputational harm from the civil charges brought in this case than from the fact that he has been indicted in the Criminal Action.   A number of courts that have granted stays of discovery have addressed similar arguments, and have responded that allowing parallel civil proceedings to move forward would distract the government, defendants and the court from the related criminal proceedings, which are of "greater relative importance."   *Nicholas*, 569 F. Supp. 2d at 1072-73 ("the foremost concern of the Court is for the parties to devote their time, energy and resources towards preparing for the criminal trial"); *SEC* v. *Gordon*, No. 09 Civ. 61 (CVE), 2009 WL 2252119, at *5-*6 (N.D. Okla. 2009) ("[i]t seems [the defendant] might stand to benefit from proceeding with the criminal case first" in order to avoid implicating the defendant's Fifth Amendment rights and the "distraction of defending himself in a civil action while facing serious criminal charges … [i]n fact, defendants … often seek to stay the civil proceedings for these very reasons").

Finally, the Court should reject Archer's argument that he is prejudiced by the timing of the Criminal Action, specifically by the fact that the next pretrial conference in the Criminal Action will not occur until November.  (Br. 14-15).[10]   For all of the reasons set forth above, it is unlikely

---

[10]  Three of the defendants in this matter – Jason Galanis, John Galanis and Gary Hirst – are also defendants in unrelated criminal and civil actions pending in this District.  *See United States* v. *Jason Galanis et al.*, 15 Cr. 643 (PKC); *SEC* v. *Galanis et al.*, 15 Civ. 7547 (VEB).   The latter matter has been fully stayed as a result of a stipulation signed by all parties.   On July 21, 2016, Jason Galanis pled guilty to four criminal counts in the matter pending before Judge Castel and, on July 20, 2016, John Galanis pled guilty to two criminal counts in that matter.   Gary Hirst and two

that the Civil Action will be resolved before the Criminal Action, regardless of the speed with which the Criminal Action proceeds.   Further, Archer voiced no opposition to the November conference date during the proceeding before Judge Abrams at which that conference date was set. *See* Tr. of June 8, 2016 Conference (attached as exhibit D to Archer's brief) at 28 ("THE COURT: Does anyone have any objection to my putting the case off until October?   No.   So why don't we do that.").   Finally, Judge Abrams made clear that she would set both a motion schedule and a trial date at the next conference in the Criminal Action.   *See* Tr. of June 8, 2016 Conference at 26 ("THE COURT: . . . What I would like to do is set another conference.   At that time I'm going to ask whether you intend to make any motions and set a schedule for motions, as well as a trial date.").   As a result, the Criminal Action will, within a short period of time, have a fixed termination point.   During that time period, Archer will have access to the voluminous Rule 16 discovery that largely overlaps with the documentary discovery in the Civil Action and will therefore not be prejudiced in his efforts to prepare for the trial of the Civil Action.

## IV.      The Court's Interests Weigh in Favor of a Stay

For the reasons stated in the Government's opening brief and the reasons stated above, the interests of judicial economy weigh in favor of a stay.   *See* Gov't Mem. at 14-15.   Because Fifth Amendment considerations make it almost certain that the Civil Action will proceed after the Criminal Action is completed, the typical concerns for the swift resolution of civil cases are mitigated and do not counsel against the granting of a stay in this matter.[11]

---

other defendants are scheduled to begin trial before Judge Castel on September 12, 2016.

[11]   Archer appears to misapprehend Judge Rakoff's decision in *SEC* v. *Oakford Corp*, 181 F.R.D. 269 (S.D.N.Y. 1998).   In his opposition, Archer claims that, in *Oakford*, Judge Rakoff "reject[ed] a similar motion." (Br. 23).   This is simply wrong.   First, the motion at issue in Oakford was a motion to dismiss a civil proceeding initiated by the SEC, not a motion for a stay.   *See* 181 F.R.D. at 270.   Second, Judge Rakoff actually *granted* the dismissal motion.   *Id.* at 273.   Finally, to the

## <u>CONCLUSION</u>

For the reasons set forth above, the Government respectfully requests that its application to intervene and for a limited stay of discovery be granted in its entirety, and that the Court so order the proposed order submitted with the Government's initial motion for a limited stay.

Dated:  New York, New York
        August 1, 2016

Respectfully submitted,

PREET BHARARA
United States Attorney

By:     /s/
        BRIAN R. BLAIS
        AIMEE HECTOR
        REBECCA MERMELSTEIN
        Assistant United States Attorneys
        One Saint Andrew's Plaza
        New York, New York 10007
        Telephone: (212) 637/2521/2203/2360
        Facsimile: (212) 637-2452

---

extent Judge Rakoff offered criticism of the SEC and the U.S. Attorney's Office, it was because the SEC sought dismissal of the case against defendants who hadn't pled in the related criminal proceeding on the eve of the date by which discovery was required to be produced to those defendants.   Here, however, the defendants in both the Criminal Action and the Civil Action have received and will continue to receive substantial productions of documentary evidence, regardless of whether the requested limited stay is granted.   Thus, unlike *Oakford*, there is no suggestion that the SEC "has no intention of pursuing" the Civil Action.   *Id.*