UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
SECURITIES AND EXCHANGE COMMISSION,   :
                                      :
        Plaintiff,                    :   16 Civ. 3505 (WHP)
                                      :
        v.                            :   ECF Case
                                      :
DEVON D. ARCHER, BEVAN T. COONEY,     :
HUGH DUNKERLEY, JASON W. GALANIS,     :
JOHN P. GALANIS, GARY T. HIRST and    :
MICHELLE A. MORTON,                   :
                                      :
        Defendants.                   :
------------------------------------------------------------------------ x

PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION PURSUANT TO FED. R. CIV. P.
15(a) AND 21 FOR LEAVE TO AMEND ITS COMPLAINT

SECURITIES AND EXCHANGE
COMMISSION
   Nancy A. Brown
   H. Gregory Baker
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-1023 (Brown)

November 7, 2016

Plaintiff Securities and Exchange Commission ("Commission") respectfully submits this memorandum of law in support of its motion for leave to amend its Complaint pursuant to Fed. R. Civ. P. 15(a) and 21 to add Francisco Martin as a Defendant.

## Preliminary Statement

The Commission seeks leave to amend its Complaint to add Francisco Martin – a party already identified as "Galanis Associate" in the existing Complaint – as a named Defendant. Because the case is at its earliest stages, and discovery has been completely stayed as to some Defendants, and limited as to all Defendants, until the completion of the parallel criminal proceedings, no existing Defendant will suffer prejudice by the joinder of Martin. The Commission has not been dilatory in seeking to add Martin and there can be no claim of bad faith or futility. Thus, given the absence of bad faith or prejudice, leave to amend should be granted.

## Background

### The Proposed Amendments

The Commission brought this action against seven Defendants charging a wide-ranging scheme devised by Defendant Jason Galanis to orchestrate the theft of proceeds of three bond offerings by tribal corporation Wakpamni Lake Community Corporation ("WLCC") beginning in March 2014. (Declaration of Nancy A. Brown, executed November 7, 2016 ("Brown Decl."), Ex. A (Complaint) ¶¶ 1 - 9.) The Complaint details the central roles played by Defendants Jason Galanis, John Galanis, Devon Archer, Bevan Cooney, Gary Hirst and Michelle Morton in devising the offering by WLCC of its "Tribal Bonds," the acquisition of two investment advisory firms, Hughes Capital LLC ("Hughes") and Atlantic Asset Management, LLC ("AAM") for the purpose of selling the Tribal Bonds in two of the tranches to unsuspecting advisory clients, and

1

the distribution of the proceeds from those offerings among them and entities that the Defendants controlled. (Id. ¶¶ 27-108.)

The Complaint specifically identifies the role that proposed Defendant Francisco Martin played in these events, although it does not name him or his entity. Thus at Paragraphs 6-7 of the Complaint, the Commission alleges that Galanis recruited Martin – called "Galanis Associate" in the Complaint – to act as Investment Manager for the proceeds of the Tribal Bond offerings in 2014 through his allegedly independent investment management company – called "Investment Management Company A." (Complaint ¶¶ 6-7.) Pursuant to the annuity contract entered into by WLCC and Wealth Assurance Private Client Company ("WAPCC") – an entity Jason Galanis controlled and for which Dunkerley acted as President – and the Trust Indenture governing the Tribal Bond issuance, the bond proceeds were to be managed by the independent investment manager in a separately managed account at WAPCC. (Id. ¶¶ 36-39.) In truth, however, the independent investment manager was a company Martin set up called Private Equity Management LLC ("PEM"), a company that did nothing to manage the proceeds of any of the Tribal Bond offerings. Martin was paid $150,000 to sign the annuity contract on PEM's behalf. (Id. ¶¶ 7, 36-39.) By virtue of his control over the supposed independent investment manager (PEM and Martin), and the annuity provider (WAPCC), Jason Galanis gained control over the Tribal Bond proceeds to distribute as he and his co-Defendants Archer, Cooney, Dunkerley, Morton and Martin saw fit.

Martin played yet another important role in the scheme. As alleged in our Complaint, at the direction of Hirst, Martin opened and controlled accounts in the names of IPO Participant 1 and IPO Participant 2 at Burnham Securities through which Tribal Bond proceeds were funneled to buy Technology Company's IPO shares. Thus, as originally alleged, between April 29 and

May 18, 2015, Dunkerley authorized the wiring of $4,336,000 from the WAPCC account – the entity to which Martin had directed Tribal Bond proceeds in fictitious purchases of an annuity he was to manage as WLCC's independent Investment Manager -- to those two accounts at Burnham and did so at Jason Galanis' direction or with his knowledge. (Complaint ¶ 105.) The Complaint further alleges that Martin used that money to purchase 867,000 shares of Technology Company, representing 87% of its IPO, in IPO Participant 1 and IPO Participant 2's accounts. (Id. ¶ 106.)

Even after Jason Galanis and Hirst were arrested in connection with their earlier fraud involving Gerova Financial Group, Ltd., Martin continued to act on Jason Galanis's behalf in keeping the Wakpamni fraud alive. After he was arrested, Jason Galanis needed a surreptitious way to communicate with his co-Defendants. Martin provided it by creating a new internet domain, "colarisventures.com." And he created a new email address for Jason Galanis that would disguise his identity and discourage law enforcement scrutiny: legal@colarisventures.com. (Complaint ¶ 110.) Jason Galanis used this email account to correspond with Dunkerley, Archer, Cooney and others, even dictating responses Dunkerley should provide to third parties. (Id.)

Thus, through its proposed Amendment, the Commission seeks to add a party already known to Defendants and identified in its original Complaint.[1]

---

[1] The Commission also seeks leave to add an additional paragraph to its Prayer for Relief, to include a prayer for penalties for the violations it proves against Defendants Jason Galanis, John Galanis, Archer, Cooney, Dunkerley, Hirst and Martin under Sections 17(a)(1) and (3) of the Securities Act pursuant to Securities Act Section 20(d). That paragraph was inadvertently omitted, but penalties pursuant to Section 20(d) is recited as relief that the Commission would seek in paragraph 14 of the existing Complaint. Thus Defendants cannot claim lack of notice that the Commission would seek that relief. Further minor amendments are proposed to add facts that have transpired since filing, including the criminal convictions of Jason Galanis, John Galanis and Hirst in the Gerova matter.

3

## ARGUMENT

Fed. R. Civ. P. 15(a)(2) provides that where a party is unable to amend as of right, and has not obtained the consent of the existing Defendants in the matter, it must seek the Court's leave to amend a complaint.[2] Leave should be granted "freely, . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). As the Supreme Court has directed, leave to amend should be granted in the absence of factors "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008); Martin v. Sprint/United Mgmt. Co., 15 Civ. 5237 (PAE), 2016 WL 2757431, at *2 (S.D.N.Y. May 12, 2016).

Where a party seeks to amend its complaint by adding a party, Rule 21 governs. Momentum Luggage & Leisure Bags v. Jansport, Inc., No. 00 Civ. 7909 (DLC), 2001 WL 58000, at *1 (S.D.N.Y. Jan. 23, 2001). Rule 21 provides: "On motion or on its own, the court may at any time, on just terms, add or drop a party." However, in determining whether the terms are "just" under Rule 21, courts "apply the 'same standard of liberality afforded to motions to amend pleadings under Rule 15." Martin v. Sprint/United Mgmt. Co., 2016 WL 2757431, at *3 (quotations omitted); accord LCE Lux HoldCo S.a.r.l. v. Enretenimiento GM de Mexico S.A., 287 F.R.D. 230, 236 (S.D.N.Y. 2012) ("Motions under Rule 21 are governed by the same standard as a motion to amend under Rule 15.")

---

[2] As detailed in the Brown Declaration, the Commission notified Defendants of its intention to seek leave to amend the Complaint to add Martin as a party, and sought their consent. Three Defendants consented, but Archer, Cooney, Hirst and Galanis did not respond to the Commission's request. (Brown Decl. ¶ 3.)

4

### A. Existing Parties Will Suffer No Prejudice by the Amendment of the Complaint

In assessing the factors that might counsel against amendment, courts have recognized that prejudice to the existing parties "may well be the most important consideration when deciding a motion to amend." Lin v. Toyo Food, Inc., No. 12 Civ. 7392 (KMK), 2016 WL 4502040, at *2 (S.D.N.Y. Aug. 25, 2016). Prejudice is analyzed by reference to the need for the opponent of the motion to expend significant additional resources to conduct discovery and prepare for trial and the delay to resolution of the action caused by the amendment. Monahan v. NYC Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000).[3]

Given the infancy of this matter, and the current limited (and as to some Defendants, full) stay imposed, no prejudice would be suffered by any of the existing Defendants by the addition of Martin. No significant additional resources will be needed to conduct discovery or prepare for trial and there will be no delay to a resolution of this matter since the criminal proceedings have effectively stayed it in any event.

### B. The Commission Seeks Leave in Good Faith and Has No Dilatory Motive

Nor could it be said that the Commission has acted in bad faith or with dilatory motive. The Commission gave notice to the existing Defendants of its view of Martin's involvement in describing his conduct in the Complaint. And a mere five months has elapsed since the initial Complaint was filed.

---

[3] Monahan also dictates consideration of the plaintiff's ability to bring a timely action in another jurisdiction if amendment is not allowed, but that factor is not relevant here. While the Commission could bring a separate action against Martin, a separate action would not conserve judicial resources. Rejecting the argument that a plaintiff could simply bring a separate action, rather than amend its complaint, the Lin Court held that amendment provided the most efficient use of judicial resources: "[C]ourts exercising their discretion to grant leave to amend, add parties, or file supplemental pleadings should allow such amendment or supplementation 'where it will promote the economic and speedy disposition of the controversy between the parties.'" Lin v. Toyo, 2016 WL 4502040, at *3 (quoting Judge v. NYC Police Dep't, No. 05 Civ. 2440, 2008 WL 5148737, at *2) (S.D.N.Y. Dec. 8, 2008)).

5

### C. The Proposed Additional Charges to Add Martin as a Defendant Are Not Futile

Finally, the Commission's proposed amendment is not futile. Futility under Rule 15 is measured by the amended pleading's ability to withstand a dispositive pretrial motion. Touchtunes Music Corp. v. Rowe Int'l Corp., 847 F. Supp. 2d 606, 621 (S.D.N.Y. 2012); see also Lin v. Toyo, 2016 WL 4502040, at *5 (in evaluating whether a proposed amendment would be futile, "the court typically applies the same standards as those governing a motion to dismiss for failure to state a claim" under Fed. R. Civ. P. 12(b)(6)) (quotations omitted). Thus the Court must accept all facts pled as true and construe them in the light most favorable to the Commission. Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012).

Here, the Commission has alleged that Martin posed as an independent investment manager to both carry out the scheme to abscond with the Tribal Bond offering proceeds and to deceive both the WLCC and the Indenture Trustee to entrust those proceeds to his care. The proposed Amendment alleges that Martin signed those agreements knowing that he would not carry out any of the duties assigned to him or PEM, and with knowledge or reckless disregard that his role was to funnel the WLCC proceeds to Jason Galanis and other Defendants. (Brown Decl., Ex. B (Proposed Amended Complaint ("AC")) ¶¶ 38-41.)[4]

The proposed Amended Complaint further alleges that Martin set up accounts for Hirst at Burnham Securities and directed the trading in them to buy the vast majority of Technology Company's IPO offering, furthering the scheme to support Technology Company's IPO with Tribal Bond proceeds. Martin knew or was reckless in not knowing that those accounts were funded with money he himself had directed to WAPCC as the purported independent Investment Manager of Tribal Bond proceeds. And he knew, or was reckless in not knowing, that the

---

[4] A red-lined version of the proposed Amended Complaint, showing changes from the filed Complaint, is attached as Exhibit C to the Brown Declaration.

6

Investment Management Agreement he signed required the purchase of an annuity with those funds, not the investment in speculative IPO shares held by entities having no connection to WAPCC except through Hirst and Jason Galanis. (AC ¶¶ 107-110.)

These allegations are sufficient to allege claims under Securities Act 17(a) (1) and (3) and Exchange Act Sections 10(b) and Rules 10b-5 (a) and (c) thereunder. To state a claim for scheme liability under Rule 10b-5(a) and (c), plaintiff must allege "that the defendant, in connection with the purchase or sale of a security,[5] '(1) committed a manipulative or deceptive act (2) in furtherance of the alleged scheme to defraud [and] (3) scienter. . . ."[6] SEC v. Simpson Capital Mgmt., Inc., 586 F. Supp. 2d 196, 201 (S.D.N.Y. 2008). Scheme liability "hinges on the performance of an inherently deceptive act." SEC v. Kelly, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011). Here, as but one example of an inherently deceptive act, Martin posed as an independent investment manager willing and able to oversee WLCC's investments of bond proceeds as a fiduciary when he had no intention of doing so, and instead, understood that his role was merely to sign documents that would funnel the proceeds to Jason Galanis and others. Because Martin's role was integral to ensuring that the Tribal Bond proceeds were diverted from investment in a legitimate annuity to Jason Galanis and his associates (who used the proceeds for their own corporate expansion purposes and personal profit), his deception was in furtherance of the scheme to defraud the WLCC, the Indenture Trustee and the unwitting Hughes and AAM clients whose money the Defendants ultimately stole.

---

[5] Claims brought by the Commission under Section 17(a)(1) and (3) must allege that the deceptive acts were committed in "the offer or sale" of a security. SEC v. Wyly, 117 F. Supp. 3d 381, 390 (S.D.N.Y. 2015).

[6] Claims brought by the Commission need not plead reliance. Id. In addition, the Commission need not plead scienter to support its claim under Section 17(a)(3). Aaron v. SEC, 446 U.S. 680, 695-96 (1980).

To plead scienter, the Commission must "'allege facts giving rise to "a strong inference of fraudulent intent."'" SEC v. China Northeast Petroleum Holdings Ltd., 27 F. Supp. 3d 379, at 388 (S.D.N.Y. 2014) (quoting Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000)(quotations omitted)). The strong inference standard is satisfied by allegations showing that either defendants had motive and opportunity to commit fraud, or by facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. Id. To satisfy the motive and opportunity prong, the Complaint need only allege that the defendant "benefitted in some concrete and personal way from the purported fraud." Id. (quotations omitted).

The proposed Amended Complaint easily meets this standard. Where a defendant collects money as a direct result of fraudulent conduct, that is sufficient to constitute the "concrete and personal" benefit that satisfies the pleading standard for scienter. China Northeast, 27 F. Supp. 3d at 389 (ruling complaint satisfied scienter pleading standard where it alleged that defendant had directed proceeds of his fraudulent conduct to his father). Martin is alleged to have earned $150,000 for signing the first tranche Investment Management Agreement and Annuity Contract, (AC ¶ 39), and to have been paid a total of $165,000 between September 2014 and May 2015 from the Galanis-controlled Thorsdale account. (Id. ¶ 96.) And, from IPO Participant 1 and IPO Participant 2, the Commission alleges that Martin received $145,000. (Id. ¶ 110.) Those alleged payments constitute a concrete and personal benefit from the fraud, and are sufficient to support the Commission's allegation that Martin acted with scienter.

Because the Commission's proposed Amended Complaint adequately alleges claims against Martin for violations of Securities Act Sections 17(a)(1) and (3) and Exchange Act Section 10(b) and Rules 10b-5(a) and (c) thereunder, amendment would not be futile.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the accompanying declaration and exhibits thereto, the Commission respectfully requests that the Court grant its motion for leave to amend.

Dated: November 7, 2016
      New York, New York

SECURITIES AND EXCHANGE COMMISSION

By: _____
    Nancy A. Brown
    H. Gregory Baker
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-1023 (Brown)