

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NANCY A. BROWN
TELEPHONE: (212) 336-1023

May 10, 2018

**VIA UPS Overnight and ECF**

Hon. Ona T. Wang
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY  10007-1312

    Re:    SEC v. Archer, et al.;
              No. 16 Civ. 3505 (WHP) (OTW)

Dear Judge Wang:

       We represent Plaintiff, Securities and Exchange Commission (the "Commission"), in this action.

       We write in response to the May 4, 2018 letter to the Court from counsel for Burnham Asset Management Corp. ("BAM"), enclosing the authorizations to which counsel referred at our May 2, 2018 discovery conference ("Conference"). According to those documents, Ms. Merola's client, and the custodian of the BAM records, Marcelle Devine, has been authorized since March 14, 2018 to take all actions on behalf of BAM,[1] including, presumably, responding to the Commission's Subpoena.

       We write to request that the Court direct BAM to comply with the Commission's subpoena as soon as possible, or direct it to show cause why it cannot. Although BAM claims to need six weeks for a privilege review, it is unclear why. If the grounds BAM cites to justify such a lengthy review period can be addressed now (as illustrated below), the Commission hopes to avoid further delay.

---

[1]    Contrary to the information Ms. Merola provided at the Conference and which apparently came from her client, the resolution did not merely authorize Ms. Devine to retain counsel (Tr. at 23), but to "do all such acts and things, as may be necessary or appropriate." (Letter of Michelle Merola to the Court, dated May 4, 2018 (Joint Written Consent of the Current Voting Members and the Board of Managers of BAM Holdings, LLC, dated March 14, 2018).) Nor was it signed by anyone other than Mr. Archer, Mr. Liu and Andrew Godfrey. Cf. Tr. at 23. Nonetheless, because it reflects the delegation of all authority to Ms. Devine from, among others, Mr. Archer, the Court's May 3, 2018 Order (DE 152) staying discovery "on behalf of -- and directed toward – Devon Archer" should not stay BAM's compliance with the Commission's subpoena.

Hon. Ona T. WangMay 10, 2018
Page 2

For example, Ms. Merola intimated that the documents on BAM's hard drive might have to be reviewed by individual BAM employees for privilege. (Tr. at 6.) But individuals who may have used BAM's email servers to conduct their own, non-BAM related business waived whatever privilege they might assert by doing so. In re the Reserve Fund Secs. and Deriv. Litig., 275 F.R.D. 154 (S.D.N.Y. 2011) (where firm had policy against use of company email to send personal emails, and firm was required to make firm email available for review by Investment Advisers Act, marital privilege covering emails exchanged by company officer with his wife was waived for lack of expectation of privacy); accord United States v. Nordlicht, No. 16 Cr. 0640 (BMC), 2018 WL 705548, at *4-5 (E.D.N.Y. Feb. 2, 2018) (rejecting investment adviser employee defendants' expectation of privacy arguments with respect to personal emails sent over firm's email system).

Like the investment advisor firm's emails in the Reserve Fund, BAM's emails were subject to SEC inspection pursuant to Section 204 and Rules 204-2(a)(7) and 204-2(g)(2)(ii) of the Investment Advisers Act of 1940. 15 U.S.C. § 80b-4; 17 C.F.R. § 275.204-2(a)(7) and 17 C.F.R. § 275.204-2(g)(2)(ii). Recognizing that obligation, BAM's employee handbook warned that the "e-mail system . . . [is] intended for Burnham purposes only," "e-mail and internet usage may be monitored by Burnham," and "all e-mail-messages, files or photos you send and receive are permanently stored in our records." BAM's Compliance Manual advised employees that "e-mail and internet usage will be monitored by BAM." Thus, any use of BAM's servers to conduct personal email communications – even with counsel—could not have been undertaken by any BAM employee with any expectation of privacy, destroying any privilege that might otherwise obtain.

With respect to BAM's own corporate privilege, the Commission is willing to offer BAM a "purposeful production" agreement that would allow it to produce documents without such a review, and reserve claims of privilege for later assertion. Accordingly, BAM would need only to review its hard drive for responsiveness.

Finally, to the extent that the hard drive also contains documents of Burnham Securities Inc. – BAM's former affiliate – they, too, are subject to a Commission subpoena issued December 5, 2016. In recent discussions I have had with Barry Friedberg, counsel for Burnham Securities Inc.'s shareholder, Jon Burnham, Mr. Friedberg has advised that Burnham Securities Inc. has no financial means to conduct a review of documents and will not agree to a purposeful production agreement. If BAM may ultimately take the position that its documents and Burnham Securities Inc. documents are indeed commingled and inextricably so, learning that now will enable the parties to avoid further delay by receiving earlier direction from the Court.

Accordingly, the Court should direct BAM to identify the reasons why it needs such an extensive period in which to produce responsive documents so that issues of the employees'

Hon. Ona T. Wang  
May 10, 2018  
Page 3

privileges and the commingling of records with Burnham Securities Inc. can be promptly addressed.

                              Respectfully submitted,

                              Nancy A. Brown

cc:    All Defendants via e-mail or overnight mail

        Michelle Merola, Esq. (via email)  
            Counsel for BAM  
        Barry Friedberg, Esq. (via email)  
            Counsel for Jon Burnham, shareholder of Burnham Securities Inc.